Roger N. HODGES and wife,
Ellen Hodges, Plaintiffs,

v.

Joe K. REID and wife, Janice B. Reid, William A. Miller and June Barrett, William C. Hawk, City of Johnson City Planning Commission and Jim Moody, Security Federal Savings & Loan Association, Jackie D. "Pete' Adams and wife, Marshia W. Adams, Defendants.

Court of Appeals of Tennessee, Eastern Section.

March 2, 1992.

Permission to Appeal Denied by Supreme Court May 18, 1992.

M. Stanley Givens with Anderson, Fugate, Givens & Counts, Johnson City, for appellant Jackie D. "Pete" Adams.

Kent Herrin with Herrin & Herrin, Johnson City, for appellee City of Johnson City.

Stuart Hampton with Hampton & Hampton, Elizabethton, for appellee Sec. Federal Sav. & Loan Ass'n.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The complaint, as filed in this suit, is a shotgun approach against some eleven defendants, with a conglomeration of allegations of various wrongful acts by the defendants, with the ultimate charge of the wrongful inducement of a breach of contract pursuant to T.C.A. § 47–50–109. The suit was ultimately dismissed as to all of the defendants, by either voluntary nonsuit, summary judgment, or the court after trial, except for the Defendant–Appellant, Jackie D. "Pete" Adams.

This litigation is the outgrowth of the redivision of one of the tracts of land in the original division of the Keefauver farm located in the 11th Civil District of Washington County. The farm was originally divided into tracts of five acres or more to avoid the necessity of approval by the Johnson City Planning Commission pursuant to T.C.A. § 13–3–401.

Defendant Adams purchased Tract 6 which was adjacent to Tract 5. Tract 5 contained 10.735 acres. In 1985 Tract 5 was redivided into three tracts, being Tract 5A containing 5.003 acres, Tract 5B containing 4.669 acres, and Tract 5C containing 1.073 acres. After the division of Tract 5, Defendant Adams purchased Tract 5A and a one-half undivided interest in Tract 5C which was designated as a right-of-way to Tracts 5A and 5B.

In March, 1987, Plaintiffs Hodgeses purchased Tract 5B and a one-half undivided interest in Tract 5C. When Mr. Adams learned the Hodgeses were interested in purchasing Tract 5B he became very concerned because he had a strong desire to purchase the tract as an addition to his

existing property. Because of his desire to own Tract 5B, Mr. Adams went to the Hodgeses and tried to dissuade them from buying the lot. He was unable to dissuade them and, after they purchased it, he tried to purchase it from them but they refused to sell.

At some point, Mr. Adams learned that Tract 5B contained only 4.669 acres. He then asked his attorney if the size of Tract 5B could affect the legality of the other tracts. It was his attorney's opinion that it could. Mr. Adams then contacted the planning commissioner, Defendant William Moody, and requested his opinion. Mr. Moody sought advice from the staff attorney of Johnson City, Mr. James Culp. In a memorandum to Mr. Moody dated June 23, 1987, Mr. Culp opined that the smaller tract made the subdivision subject to the Planning Commission's approval. Mr. Culp stated that a plat of the property should be approved by the Johnson City Regional Planning Commission. Mr. Moody informed Mr. Adams that, in his opinion, the subdivision was technically illegal until a plat was approved by the Johnson City Regional Planning Commission. Mr. Adams then called Mr. Hodges and told him the subdivision was technically illegal, creating a cloud on the title of all homeowners in the subdivision. Mr. Adams also informed the Johnson City Building Commissioner, John A. Sims, of this problem.

On July 6, 1987, Mr. Sims granted Mr. Hodges a building permit accompanied by a letter stating: "Please be advised that the lot on which you are building is being contested by an adjoining property owner as to the validity of conforming [to] the Washington County Zoning Ordinance. If you build on this lot it shall be at your own risk." This information did not deter Mr. and Mrs. Hodges from going forward with the construction of their house, apparently because their attorney told them he thought their Tract 5B plus their one-half interest in Tract 5C would satisfy the minimum five-acre requirement of T.C.A. § 13–3–401, et seq.

In July, 1987, the Hodgeses closed a loan on their property with Defendant Security Federal Savings & Loan Association (Security) for $81,000. The loan was in the nature of a construction loan and permanent financing. The funds from the loan were to be disbursed to the Hodgeses as construction progressed. The initial cost of construction was to be paid by the Hodgeses from personal funds received by them from the sale of their house and no disbursements were scheduled to be made by Security prior to January, 1988. The record reveals that, although the Hodgeses were aware of the questions relating to the illegality of the size of their lot, they did not inform Security of this at the closing of the loan.

The Hodgeses began construction of their house about August 4, 1987. On August 6, Mr. Culp, the city attorney, at the request of Mr. Adams's attorney, sent Security a copy of his opinion expressing his views that the plat of the property required the approval of the Planning Commission. Upon receipt of the letter, Mr. Peter Hampton, President of Security, got in touch with Mr. Hodges about the matter and in that conversation it was mutually agreed that the prudent thing to do would be to delay further construction until the problem was resolved by the Regional Planning Commission.

In the interim, Mr. Moody placed the matter relating to the Hodges property on the agenda of the Johnson City Planning Commission for their August meeting. It appears Mr. Moody notified Mr. Adams of this meeting but, through oversight, failed to notify the Hodgeses of the meeting. At the meeting, the Planning Commission voted to "table" the matter without taking any action.

Upon learning of the August Planning Commission meeting, the attorney for the Hodgeses requested Mr. Moody to put the matter on the agenda for the Planning Commission's September, 1987, meeting. The Hodgeses and their attorney were present at this meeting. The attorney for the Hodgeses requested that his clients be heard. He also stated that, because of the Planning Commission's lack of action, the lender, Security, had declined to proceed

with the construction loan, and prime building time was being lost. The Planning Commission refused to remove the item from the table and did nothing to indicate what the future of the matter might be. On August 9, 1988, the Johnson City Planning Commission voted to take the matter off the table and not take any further action on it.

In December, 1987, the Hodgeses filed suit in the chancery court alleging the Defendants, together, conspired to interfere with their construction loan contract. They alleged Security breached its contract by "arbitrarily withholding funds." They sought damages for the total disruption and cessation of the building of their house, including the increased cost of construction and rent due to the delay. They alleged Moody and Adams "willfully and maliciously induced" Security to breach its construction contract and requested treble damages pursuant to T.C.A. § 47–50–109. They alleged Defendant Moody "aided and assisted" in getting the letter from the city attorney to Security. They requested that the court declare the subdivision legal and decree they had the right to erect power, water and sewer lines across Tract 5C.

Each of the Defendants filed an answer joining issue on each pertinent allegation. Jim Moody and Security Federal both filed motions for summary judgment which were sustained by the court. The City of Johnson City and Defendant "Pete" Adams also filed motions for summary judgment, but they were overruled and the case went to trial as to them.

At the conclusion of the trial, the City renewed its motion to dismiss, insisting it was immune under the Tennessee Governmental Tort Liability Act pursuant to T.C.A. § 29–20–205. The court sustained the motion and dismissed the case as to the City. In dismissing the case as to the City, however, the court held "that the City and its various departments are estopped from, in the future, ever considering or questioning the legality of the Keefauver Farm Division...."

As to Defendant Adams, the court had previously held there was no breach of contract between Security and the Hodgeses and, for this reason, T.C.A. § 47–50–109 was not applicable to the case. The court, however, found Mr. Adams had "tortuously interferred with their [Hodgeses'] contractual rights," and awarded a judgment against him for $20,097 compensatory damages and $5,000 punitive damages. Adams has appealed, saying the court was in error in holding him liable when there was no breach of contract.

As pertinent here, the Hodgeses have also presented the following issues for review: "1. Whether the Trial Court erred in holding that the defendant, Jackie C. "Pete" Adams, had not violated TCA § 47–50–109 and refusing to treble the damages awarded; 2. Whether the Trial Court erred in granting Jim Moody's Motion for Summary Judgment; 3. Whether the Trial Court erred in granting the City of Johnson City's Motion to Dismiss Pursuant to TCA § 29–20–205; 4. Whether the Trial Court erred in granting Security Federal Savings and Loan's Motion for Summary Judgment."

Our review of the record and the law applicable to the issues leads us to the conclusion that there is merit in the insistence of Mr. Adams that the court was in error in holding him liable to the Hodgeses for compensatory and punitive damages. We find, however, no merit in either of Hodgeses' issues. We, accordingly, reverse as to Adams's but affirm as to Hodgeses' issues for the reasons hereinafter stated.

We first consider Hodgeses' first and fourth issues together. They say the court erred in holding Adams had not violated T.C.A. § 47–50–109 and in not assessing treble damages. They also say the court erred in granting Security Federal summary judgment.

Before recovery can be had under T.C.A. § 47–50–109, seven elements must be proved:

1. There must be a legal contract.

2. The wrongdoer must have knowledge of the existence of the contract.

3. There must be an intention to induce its breach.

4. The wrongdoer must have acted maliciously.

5. There must be a breach of the contract.

6. The act complained of must be the proximate cause of the breach of the contract.

7. There must have been damages resulting from the breach of the contract.

*Dynamic Motel Management, Inc. v. Erwin,* 528 S.W.2d 819, 822 (Tenn.App.1975). *Also see TSC Industries, Inc. v. Tomlin,* 743 S.W.2d 169 (Tenn.App.1987).

█ Three of these criteria are missing in the case at bar. The trial court found there had been no breach of contract, and the record supports this holding. Furthermore, element 6, proximate cause, and element 7, resulting damages from the breach of contract, are also lacking.

In support of the holding that there was no breach of contract are the testimonies of Mr. Hampton, President of Security Federal, and Plaintiff Hodges. Mr. Hampton testified he and Mr. Hodges discussed the problem on August 12, 1987, and he and Mr. Hodges agreed "that we should halt construction until this controversy was settled." Mr. Hodges testified as follows:

"Q. Did you at that time [during conversation with Mr. Hampton on August 12, 1987] feel like that it was in your best interest to hold up until the matter was settled?

"A. Yes.

"Q. In conversation with Mr. Hampton or with your attorney, did anyone ever tell you that if the Planning Commission decided to enforce the law to the very letter, that you might, if you built the house, not receive water or power?

"A. Yes."

Although the Hodgeses argue in their brief that there was a breach of contract, they fail to point us to a scintilla of evidence in the record to support such argument. The record is devoid of any such proof. It is also devoid of any proof that the delay in the Hodgeses' completing their house had any relationship to the contract between them and Security Federal. We, accordingly, agree that the action of the court in holding Mr. Adams was not in violation of T.C.A. § 47–50–109 and in dismissing the suit as to Security Federal were both proper.

█ Hodgeses' second issue is that the court erred in granting summary judgment to Jim Moody. We cannot agree. In their complaint, the Hodgeses alleged Moody conspired with Mr. Adams to cause a breach of contract. Since there was no breach of contract, he could not be held liable under this theory. They further say he is liable for failure to notify them or their attorney that the issue concerning the size of their lot had been placed on the agenda for the August, 1987, meeting of the Planning Commission. This argument is also without merit. The Hodgeses cite us to no authority to support such an argument.

█ The Hodgeses' other issue is that the court erred in dismissing the suit as to Johnson City pursuant to T.C.A. § 29–20–205. Again, we cannot agree. T.C.A. § 29–20–205 provides, in pertinent part, that:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:

(1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;

(2) Arises out of ... interference with contract rights, ...

(3) Arises out of the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization;

....

Our Supreme Court defines "discretionary function" as follows:

Where the duty is absolute, certain and imperative, and is simply ministerial, the officer is liable in damages to any one

specially injured, either by his omitting to perform the task or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, and to be exerted or withheld according to his own judgment, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a willful exercise of them, where no corruption or malice can be imputed to him, and he keeps within the scope of his authority. (Citations omitted.)

*Gordon v. City of Henderson,* 766 S.W.2d 784, 786 (Tenn.1989).

The Purpose of this immunity for "discretionary functions" is not to protect an erring official, but to insulate the decision-making process from the harassment of prospective litigation. The provision of immunity rests on the view that the threat of liability will make governmental officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexation and often frivolous damages suits. (Citations omitted.)

*Doe v. Bd. of Education of Memphis,* 799 S.W.2d 246, 248 (Tenn.App.1990).

The Commission's refusal to take affirmative action at its September, 1987, meeting is a classic example of an exercise of discretionary powers and is not the basis for a private action against the City. T.C.A. § 29-20-205(1) and (3).

■ This brings us to Mr. Adams's insistence that the court was in error in finding him liable in damages after holding there was no breach of contract. The trial court made several findings of fact in his determination of the various issues in the case but he failed to explain the basis for holding Mr. Adams liable after holding there had been no breach of contract, as required under T.C.A. § 47-50-109. In his holding that there had been no breach of contract and consequently no recovery under T.C.A. § 47-50-109, he said, "That does not do away with your claim for tortuous interference with the contract between the Hodgeses and Security Federal." He failed, however, to point out how he reached the conclusion that Mr. Adams interfered with the contract between the Hodgeses and Security Federal. The record is devoid of any proof that anything Mr. Adams did had any effect, either good or bad, on that contract but, even if that were not the case, there could be no recovery because there was no breach of the contract.

The landmark case in this jurisdiction equating the statutory cause of action for the wrongful inducement of breach of contract pursuant to T.C.A. § 47-50-109 to that of the common law right of action is *Emmco Insurance Co. v. Beacon Mutual Indemnity Co.,* 204 Tenn. 540, 322 S.W.2d 226 (1959). There the court said: "The statute is declaratory of the common law except as to the amount of damages that may be recovered against a wrongdoer." In a more recent case in which the supreme court was addressing a common law cause of action for the wrongful inducement of a breach of contract, the court, speaking through Chief Justice Drowota, said:

Tennessee law recognizes both a common law action and a statutory action for unlawful inducement of a breach of contract. T.C.A. § 47-50-109, *Edwards v. Travelers Insurance of Hartford, Connecticut,* 563 F.2d 105, 119 (6th Cir.1977), citing numerous cases from this Court and the Court of Appeals. T.C.A. § 47-50-109 is but a statutory declaration of the common law tort action, expressly substituting treble damages for punitive damages. *Emmco Insurance Company v. Beacon Mutual Indemnity Company,* 204 Tenn. 540, 322 S.W.2d 226, 231 (1959). The statute provides for mandatory treble damages in the event there is a "clear showing" that the defendant induced the breach. *Continental Motel Brokers, Inc. v. Blankenship,* 739 F.2d 226, 229 (6th Cir.1984). In order to recover for procurement of a breach of contract the plaintiff must prove that there was a legal contract, of which the wrongdoer was aware, that he maliciously intended to induce a breach, and there must have been a breach, proximately caused by his acts, resulting in damages.

**126**

*Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn.App. 1975).

*Polk & Sullivan v. United Cities Gas*, 783 S.W.2d 538, 542 (Tenn.1989).

We hold the chancellor was in error in awarding compensatory damages and "[i]n order to recover exemplary damages, actual damages must be shown." *Solomon v. First American National Bank*, 774 S.W.2d 935, 943 (Tenn.App.1989). *See also Liberty Mutual Insurance Co. v. Stevenson*, 212 Tenn. 178, 368 S.W.2d 760, 761 (1963).

The action of the chancellor in awarding punitive damages must also be reversed.

The decree of the chancellor is modified to delete the award of damages against Mr. Adams. To the extent the decree is not modified, it is affirmed. The case is remanded for the entry of a decree in keeping with this opinion and the cost of this appeal is taxed to the Hodgeses.

GODDARD and McMURRAY, JJ., concur.