JAMES E. McGAUGH, JR.,                  )
                                        )
        Plaintiff/Counter-              )       Appeal No.
        Defendant/Appellee,             )       01-A-01-9706-CH-00256
                                        )
v.                                      )
                                        )
                                        )       Davidson Chancery
CHARLES F. and JOYCE L.                 )       No.  96-625-I
GALBREATH,                              )
                                        )
        Defendants/Counter and          )
        Cross-Plaintiffs/Appellants,    )
                                        )
v.                                      )
                                        )
THOMAS LAWLESS and FIRST                )
AMERICAN NATIONAL BANK,                 )
                                        )
        Cross-Defendants/Appellees.     )

**FILED**

**July 22, 1998**

**Cecil W. Crowson
Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON  COUNTY

AT NASHVILLE, TENNESSEE


THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


THOMAS E. STEWART
Stewart & Black
333 Gallatin Road, South
Madison, Tennessee  37115
        ATTORNEY FOR APPELLEE JAMES E. McGAUGH, JR.

ERIC V. HELMERS
721 First American Center
Nashville, Tennessee  37237
        ATTORNEY FOR APPELLEE FIRST AMERICAN NATIONAL BANK

THOMAS W. LAWLESS, Pro Se
Lawless & Associates
315 Deaderick Street
Nashville, Tennessee  37238


CHARLES GALBREATH
211 Union Street, Suite 901
Nashville, Tennessee  37201
        ATTORNEY FOR APPELLANTS CHARLES and JOYCE GALBREATH


AFFIRMED

                                WALTER W. BUSSART,
                                SPECIAL JUDGE

# OPINION

This suit involves the transfer of a piece of real estate located in Madison, Tennessee on which is situated a commercial doughnut bakery. The title of the Property is vested in Defendant Charles Galbreath and was conveyed to Mr. Galbreath by deed from DH Restaurants, Inc. Mr. Galbreath leased the property to Diversified Hospitality Group ("Diversified"), and shortly thereafter, Diversified subleased the property to Shipley Do-Nuts of which Plaintiff James McGaugh is the principal owner.

Before continuing to the substantive issues of this appeal, we consider appellant's Rule 14 motion to consider post-judgment facts. After due consideration of the appellant's motion, the court finds that the facts do not come within the purview of the rule. The motion is therefore denied.

On November 1, 1995, Mr. McGaugh entered into a contract to purchase real estate, leasehold improvements and equipment ("the Property") from Defendant for the sum of $180,000 with closing set for January 1, 1996. Defendant was to furnish the Property "by a good and valid warranty deed" secured by a title insurance policy. On December 15, 1995, Plaintiff received his primary financing commitment to finance the property from First American National Bank ("the Bank") so as to place him in a position to be ready, willing and able to close for cash on the scheduled closing date pursuant to the contract. The Bank's commitment to lend was subject to the Bank receiving a first lien on the Property and a deed of trust.

The problems in this case first arose when Thomas Lawless, the Bank's attorney, notified the Bank and Mr. McGaugh of the existence of possible defects in the title. The first defect involved the original lessee (and sub-lessor), Diversified, who was in Chapter 7 bankruptcy proceedings in Connecticut. Mr. Lawless opined that because Diversified's lease contained an option to purchase the Property at the end of the lease for $250,000, this lease, along with the option, was now the property of the bankruptcy estate. The second defect was due to a vendor's lien against the property which would either have to be released

for the amount necessary to pay it off or would have to be deducted from the $180,000 sale price. When Defendant Mr. Galbreath refused to take the necessary steps to clear the two defects in the title, Mr. McGaugh sued for specific performance and damages as a result of contract breach. Mr. Galbreath counter-sued for breach of contract and filed a cross action against the Bank and its attorney Mr. Lawless for negligently misrepresenting that the title was defective when it was not.

Initially, the trial court refused Mr. Galbreath's demand for a jury trial and granted the Bank's and Mr. Lawless's motions for summary judgment. The order of dismissal also directed Mr. Galbreath to pay sanctions for violations of Rule 11 as well as attorney's fees totaling $7,950. Subsequently, the court granted summary judgment to Plaintiff Mr. McGaugh. Mr. Galbreath gave his notice of appeal, and a stay of execution was granted. After the stay was granted, Counter-defendant Mr. Lawless had $2,500 seized by garnishment from Joyce Galbreath's bank account with the Bank. The trial judge, on motion to dissolve the garnishment, held that Joyce Galbreath had not appealed and was not a party to the stay of execution bond. He therefore declined to order that Joyce Galbreath's money be released.

## I. Appeal of Joyce Galbreath

As a preliminary matter, we must determine whether or not Joyce Galbreath is properly before this court on appeal. On October 28, 1996, the Chancery Court entered a final order dismissing the Bank and Mr. Lawless as counter-defendants. In that order, the court found that Mr. Lawless had carried the burden of proof that Mr. Galbreath had violated Rule 11. The court then reinstated the sanction previously awarded against Charles and Joyce Galbreath of $2,500 to deter wrongful conduct and the frivolous filing and continued prosecution of this case against Mr. Lawless and the Bank. Finally, the court noted that the award of sanctions against Charles and Joyce Galbreath would become a final order as this issue affects no other controversy in the case.

On November 13, 1996, Mr. Galbreath filed a Notice of Appeal which made reference to the Rule 11 sanctions. Joyce Galbreath's name was not on this notice nor did she file a separate notice. On November 18, 1996, Mr. Galbreath

filed an Amended Notice of Appeal which addressed issues involving Mr. Lawless's advice to his clients regarding the cloud on the title of the Property. Again, Joyce Galbreath was not designated as an appellant in the amended notice. The first time that Joyce Galbreath's name appeared on a notice of appeal was on the notice filed February 18, 1997. Here, both Charles Galbreath and Joyce L. Galbreath noticed their appeal "from the adverse judgments of the trial court."

"The purpose of the notice of appeal is simply to declare in a formal way an intention to appeal." Tenn. R. App. P. 3 advisory commission cmt., subdivision (f). Tennessee Rule of Appellate Procedure 3(f) states in pertinent part that "[the notice of appeal shall specify the party or parties taking the appeal. . . " Besides requiring the party to be named in the notice of appeal, the Rules require that the notice be timely filed. "In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4 (a). This court has held that the time limit is mandatory and jurisdictional in civil cases. *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1985). The Tennessee Rules of Appellate Procedure specifically provide that the Court of Appeals can neither waive nor extend this time period. Tenn. R. App. P. 2 advisory commission cmt. (addressing waiver); Tenn. R. App. P. 21(b) (addressing extension of time).

In a recent case, our court addressed the specific issue of "whether the absence of a party's name from a notice of appeal is the type of informality that will not affect the party's standing as an appellant." *Town of Carthage, Tennessee v. Smith County*, No. 01-A-01-9308-CH00391, 1995 WL 92266 at *3 (Tenn. Ct. App. 1995). Concluding that the failure to specify a party in the notice of appeal was not an excusable informality, the court stated as follows:

> To be considered an appellant, a party must file a timely notice of appeal in its own name, or it must be named as an appellant in a timely joint notice of appeal filed in accordance with Tenn. R. App. P. 16(a). Parties who do neither are simply not before the court as

appellants.

*Id.* at \*4.

In light of this law, we conclude that Joyce Galbreath is simply not before this court as an appellant regarding the issue of the Rule 11 sanctions and the issue of Mr. Lawless's negligent misrepresentation and inducement of contract breach. By not filing a notice of appeal until February 18, 1997, Joyce Galbreath failed to appeal in a timely manner the trial court's judgment with regard to these issues which the trial court made final by order dated October 28, 1996. Furthermore, the two notices filed in November of 1996 by Charles Galbreath are insufficient to preserve the right of appeal for Joyce Galbreath. Therefore, these issues will be reviewed as between Mr. Galbreath and Mr. Lawless and the Bank. On the other hand, by the notice of appeal she filed on February 18, 1997, Joyce Galbreath has preserved her right to appeal the January 22, 1997 judgment granting summary judgment to Mr. McGaugh and denying the same to the Galbreaths.

## II. Breach of Contract

We turn next to the issue of contract breach as between Charles and Joyce Galbreath and James McGaugh. These proceedings began in the trial court when Mr. McGaugh sued for specific performance of the contract between these parties. By Order dated January 22, 1997, the court granted Mr. McGaugh's Motion for Summary Judgment which entitled him to specific performance of the contract for sale of the Property. In its order, the court stated that "the title exceptions have been cured per the record and are no longer subject to objection by the purchaser." On appeal, the issue is whether Mr. Galbreath did indeed breach the contract by his failure to clear the title or whether, as Mr. Galbreath asserts, Mr. McGaugh breached the contract by his failure to tender the purchase price on January 1, 1996.

The contract provided that Mr. Galbreath was to convey by "good and valid warranty deed" the Property with the sale to close on January 1, 1996. The contract included the following form language: "This contract is contingent upon buyer's ability to qualify for a new loan whenever a new loan is a part of the

terms of this contract. Buyer agrees to make said loan application on or before ___." The blank had been filled in with the typed words "already arranged." As stated, a dispute arose when Mr. Lawless advised his client, the Bank which had approved a loan for Mr. McGaugh, that there were problems with the title of the Property. In a letter from Mr. Lawless to Mr. Galbreath's then attorney, Thomas Stewart, Mr. Lawless stated that Mr. Galbreath faxed a warranty deed on January 2, 1996. When confronted on that same day about the possibility of an option held by a bankruptcy trustee for Diversified, Mr. Galbreath took the position that there was no problem and asserted that "even if there was a cloud in the chain of title, he 'was good for any damages, even though he could not conceive of any.'"

Initially, we point out that both parties waived the ability to rely on the closing date of the contract. Mr. Galbreath first faxed the warranty deed on January 2, 1998, one day subsequent to the date of closing specified in the contract. Because the parties were obviously not relying on the contract date, they had a reasonable time in which to close. *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 925 S.W.2d 545, 547 (Tenn. Ct. App. 1996). Next, we conclude that Mr. McGaugh did not breach the contract by refusing to purchase the Property on January 2, 1996 after Mr. Galbreath faxed him the warranty deed. The contract stated that it was contingent upon Mr. McGaugh's ability to qualify for a new loan. Though the bank issued a letter of intent approving such a loan, this letter was conditioned upon the loan being secured by a first lien and upon the Bank receiving a deed of trust. Regardless of the accuracy of Mr. Lawless's advice regarding the clouded title, the bank's reaction to this advice affected Mr. McGaugh's ability to obtain the loan from the Bank and thereby relieved Mr. McGaugh of his obligation under the contract. The fact that the contract provides that the buyer's agreement to make the loan application had already been arranged does not alter our finding. This language goes to the buyer's (here Mr. McGaugh's) responsibility to initiate the loan process which had in fact "already been arranged." The contingency that Mr. McGaugh qualify for the loan remained a part of the contract.

However, it is not disputed that, whatever may have been defects in the title, they have since been cleared to the satisfaction of the Bank such that Mr.

McGaugh is not only willing but able to purchase under the contract. Once cleared within a reasonable time, Mr. McGaugh still had the right under the contract to purchase the Property. *Id.* In light of Mr. Galbreath's refusal to transfer the Property, we find that the trial court did not err in awarding specific performance. The remedy of specific performance rests within the sound discretion of the trial court and upon the particular facts of each case. *Shuptrine v. Quinn*, 597 S.W.2d 728, 730 (Tenn.1979). "[S]pecific performance is regarded as appropriate when dealing with contracts for the conveyance of real property because real property is unique, and more often than not, an award of damages is simply not an adequate remedy." *GRW Enterprises, Inc. v. Davis*, 797 S.W.2d 606, 614 (Tenn. Ct. App. 1990). "[T]o support such relief the contract must be clear, complete and definite in all its essential terms. The Court will not make a contract for the parties and the agreement sought to be enforced specifically must show beyond doubt that the minds of the parties actually met and that they themselves made the agreement." *Parsons v. Hall*, 199 S.W.2d 99, 100 (Tenn. 1947) (citing Gibson's Suits in Ch., 1937 Ed., § 949).

In the instant case, the contract concerned the conveyance of a unique piece of real property on which is situated a commercial doughnut bakery run by Mr. McGaugh. Furthermore, the contract's essential terms were clear and complete leaving no doubt that the parties' minds had actually met regarding the transfer of this property. Thus, specific performance of this contract is the adequate remedy for Mr. McGaugh.

III.   Negligent Misrepresentation or Inducement to Breach a Contract

The majority of Mr. Galbreath's appellate argument does not involve the defendant Mr. McGaugh at all. Rather, Mr. Galbreath focusses on his third-party complaint against the Bank and its attorney Mr. Lawless in which he claims Mr. Lawless gave inaccurate advice which caused Mr. McGaugh to breach the contract between himself and Mr. Galbreath. It is undisputed that Mr. Lawless advised his clients that the title of the Property was clouded by an option to purchase the Property held by the bankruptcy trustee for the sub-lessor Diversified. On the one hand, Mr. Galbreath has challenged the competency of Mr. Lawless's advice by arguing that the option to purchase the land was held by Mr. McGaugh as the sublessee of Diversified because a covenant conferring an

option to purchase runs with the land and passes with an assignment of a lease. Still at other times, Mr. Galbreath has expressed his opinion that the option as held by Diversified, which was in the amount of $250,000 ($70,000 more than the McGaugh-Galbreath contract price) only improved Mr. McGaugh's position as he stood to make $70,000 should the bankruptcy trustee exercise the option. Regardless of these very different positions, Mr. Galbreath has consistently asserted that by advising his client that Diversified had any interest in the property, Mr. Lawless committed the torts of negligent misrepresentation and inducement of a breach of contract. Moreover, Mr. Galbreath claims that by granting summary judgment, the court prevented the factual issue of whether Mr. Lawless acted negligently from being determined by a jury.

We find that the trial court did not err in dismissing Mr. Galbreath's claims against Mr. Lawless. Mr. Lawless has thoroughly briefed his position in support of the competency of his advice regarding the cloud on the title. From the record, it is apparent that Mr. Lawless was diligent in arriving at his opinion. In a letter to Mr. Galbreath's attorney, Mr. Stewart, Mr. Lawless stated that he had contacted the bankruptcy trustee who opined that the lease and option were the property of the bankruptcy estate. In documents before the court, Mr. Lawless cited statutory and case law in support of his opinion that the mere existence of the option coupled with the pending bankruptcy of the record holder of that option created a cloud on the title. *See* 11 U.S.C. § 541(a)(1) (1993) (stating that a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case"). Mr. Galbreath has failed to present a convincing argument to the contrary.

However, regardless of the proficiency of Mr. Lawless's counsel, Mr. Galbreath fails to show that he could recover against Mr. Lawless under either theory advanced by Mr. Galbreath. First, we turn to the tort of negligent misrepresentation which is outlined in Section 552 of the Restatement (Second) of Torts as follows:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss

caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Robinson v. Omer*, 952 S.W.2d 423, 427 (Tenn. 1997) (citing Restatement (Second) of Torts, § 552 (1977)). There need not be contractual privity between the plaintiff and defendant (here the cross-plaintiff and cross-defendant) as long as the following criteria are met:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information meant to guide others in their business transactions; and

(3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Id.* (citing *John Martin Co. v. Morse/Diesel, Inc.*, 819 S.W.2d 428, 431 (Tenn. 1991)).

The problem here is that Mr. Galbreath is not the right plaintiff for a negligent misrepresentation claim. Certainly, Mr. Lawless was acting in the course of his profession as an attorney is advising the Bank and therefore Mr. McGaugh about the clouded title. Assuming arguendo that this advice was "faulty information" and that Mr. Lawless failed to exercise reasonable care in obtaining it, it was not given for Mr. Galbreath's benefit nor did he do anything in reliance on this advice. The supreme court noted that when courts have allowed non-clients to recover under the theory of negligent misrepresentation, it has been situations where "the advice was given for the guidance of the plaintiffs in the course of the real estate transaction and reliance upon that advice was justifiable and foreseeable." *Robinson v. Omer*, 952 S.W.2d 423, 427

(Tenn. 1997) (citing *Collins v. Binkley*, 750 S.W.2d 737 (Tenn.1988); *Stinson v. Brand*, 738 S.W.2d 186 (Tenn.1987)). While Mr. Galbreath may have been affected, he did not "justifiably rel[y] upon the information" and therefore cannot recover against Mr. Lawless under a theory of negligent misrepresentation.

We next turn to evaluate Mr. Lawless's liability under a theory of "Inducement of Breach of Contract" which is outlined in Tennessee Code Annotated section 47-50-109 as follows:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract. The party injured by such breach may bring suit for the breach and for such damages.

This court has stated that "[b]efore recovery can be had under T.C.A. Sec. 47-50-109, seven elements must be proved:

> 1. There must be a legal contract.
> 2. The wrongdoer must have knowledge of the existence of the contract.
> 3. There must be an intention to induce its breach.
> 4. The wrongdoer must have acted maliciously.
> 5. There must be a breach of the contract.
> 6. The act complained of must be the proximate cause of the breach of the contract.
> 7. There must have been damages resulting from the breach of the contract."

*Hodges v. Reid*, 836 S.W.2d 120, 124 (Tenn. Ct. App. 1992) (citing *Dynamic Motel Management, Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App.1975)). Several of these criteria are missing in this case. Most significantly, as stated above, we find that Mr. McGaugh did not breach the contract. He delayed performance until title was cleared within a reasonable time at which time he attempted to perform under the contract. In addition, there has been no allegation that Mr. Lawless acted maliciously or with the intent to induce the contract's breach but only that he was carrying out his duty to research title as hired by the Bank to do. Indeed, Mr. Galbreath states in his brief that "[i]t is not charged that Lawless intentionally harmed anyone. He simply made a mistake, undoubtedly in a misguided effort to help his client." In addition, in a Motion

-10-

to Reconsider filed June 28, 1996, Mr. Galbreath asserted that he had never "intimated . . . that Mr. Thomas Lawless was in a manner less than a competent, respected attorney," but rather that he had made a mistake. In light of Mr. Galbreath's failure to prove the elements under this cause of action, we find that the court did not err in dismissing the third party complaint against Mr. Lawless.

## IV. Rule 11 Sanctions

Finally, we address the trial court's decision to impose Rule 11 sanctions on Mr. Galbreath and his wife on account of their claims against Mr. Lawless. In its August 1, 1996 Order, the court made an initial finding that these claims "were not founded in Law or in Fact and are without merit, that there was and is no basis existing for the claims against Lawless and as a consequence the Court finds that the claims against Lawless are frivolous and brought in violation of Rule 11." At Mr. Galbreath's request, the court held a separate evidentiary hearing pursuant to Rule 11. Following the hearing, an order was entered on October 28, 1996 in which the court found that Mr. Lawless had carried his burden of showing by clear and convincing proof that Galbreath had violated Rule 11. The court then reinstated its "prior sanction awarded against Charles F. Galbreath and Joyce L. Galbreath of $2,500.00 to deter the wrongful conduct of Galbreath in the filing and continued prosecution of the frivolous lawsuit and claims against Lawless and First American."

In his brief, Mr. Galbreath claims that even if there is no basis for his tort action, it can not be considered frivolous. Mr. Galbreath claims that after researching the applicable law, he believed that Lawless's representation that the title was defective was the negligent act that caused the breach of contract by Mr. McGaugh. Mr. Galbreath claims that the court failed to give reasons for its conclusions regarding Rule 11 despite the explicit language of Rule 11.03 which provides that "[w]hen imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." Tenn. R. Civ. P. 11.03(3).

The Tennessee Supreme Court has stated that "[t]he certification which results from the attorney's signature on a motion, pleading, or other document is

directed at the three substantive prongs of Rule 11: its factual basis, its legal basis, and its legitimate purpose. . . . A signature signifies to the Court that the signer has read the pleading, motion, or other paper, has conducted a reasonable inquiry into the facts and the law, and is satisfied that the document is well-grounded in both, and is acting without any improper motive." ***Andrews v. Bible***, 812 S.W.2d 284, 287 (Tenn. 1991). "The test to be applied in deciding whether an attorney's conduct is sanctionable, is one of objective reasonableness under all the circumstances . . . and the reasonableness of the attorney's belief must be assessed in light of the circumstances existing at the time the document in question was signed." *Id.* at 288. Because such a determination involves "'fact-intensive, close calls' . . . appellate courts review Rule 11 under the 'abuse of discretion' and 'deferential' standard." ***Krug v. Krug***, 838 S.W.2d 197, 205 (Tenn. Ct. App. 1992) (citations omitted).

As we held above, Mr. Galbreath failed to prove his claims for negligent misrepresentation and inducement to breach a contract against Mr. Lawless and therefore, the lower court was correct in dismissing these claims. The question for the trial court in finding a violation of Rule 11 was whether or not Mr. Galbreath's beliefs concerning these causes of action were reasonable in light of the circumstances existing at the time that he signed documents making such allegations. For the following reasons, we hold that Mr. Galbreath's beliefs were not reasonable and that the court did not abuse its discretion in finding that Mr. Galbreath's claims against Mr. Lawless were frivolous and merited Rule 11 sanctions.

Mr. Lawless and the Bank were first brought into this lawsuit as cross defendants by Mr. Galbreath in his "Answer and Counter-Complaint" filed May 15, 1996. In that document, Mr. Galbreath alleged the Bank, acting through its agent Mr. Lawless, refused to approve Mr. McGaugh's loan in light of Diversified's option to purchase the land and thereby induced Mr. McGaugh to breach the contract. However, there is no reference to the law which supports Mr. Galbreath's cross-claims other than that found in a June 28, 1996 "Motion to Reconsider." In this document, Mr. Galbreath simply quotes the definition of "Negligent Misrepresentation" as articulated in the Restatement (2d) of Torts.

Mr. Galbreath never cites any law related to the issue of contractual privity in a negligent misrepresentation case. Nor does he cite any law on "Inducement of Breach of Contract." Finally, in the documents in the record where Mr. Galbreath's third-party claims are mentioned, there is very little analyses of the facts of this particular case to the law. Rather, Mr. Galbreath's third party claims

consist primarily of unsupported allegations that Mr. Lawless "induced a breach of contract" and made "negligent misrepresentations." Based upon this record, we cannot say that Mr. Galbreath's conduct was objectively reasonable.

### V. Conclusion

After a careful review of the record before us, we find that the trial court's judgment should be affirmed. As the court found, Joyce Galbreath preserved her right to appeal the lower court only in its finding involving the breach of contract. Regarding this issue, we find that the court below was correct in granting specific performance to the plaintiff, Mr. McGaugh. Finally, we agree with the lower court that there was no merit to Mr. Galbreath's third-party claims against the Bank and Mr. Lawless. Not only were these claims without merit, they did not have a sound legal or factual basis. Consequently, the court did not err in imposing Rule 11 sanctions on Mr. Galbreath for his conduct. In light of our findings, the decision of the trial court is wholly affirmed and the costs of appeal are taxed to the defendant Mr. Galbreath.


_____
WALTER W. BUSSART,
SPECIAL JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE