### Mark ADDAMAN, et al.

v.

### Gwendolyn R. LANFORD.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Nov. 17, 2000.

Permission to Appeal Denied by Supreme Court May 14, 2001.

Jon G. Roach, Knoxville, Tennessee, for Appellant, Gwendolyn R. Lanford.

Jay W. Mader, Knoxville, Tennessee, for Appellees, Mark and Cathalena Addaman.

## OPINION

SWINEY, J., delivered the opinion of the court in which GODDARD, P.J., and SUSANO, J., joined.

Plaintiffs, residential sellers, sued an appraiser for negligent misrepresentation and breach of contract when her appraisal was far below the contract sales price of their home. The sales contract was contingent upon the appraised value being equal at least to the sales price. The buyers declined to purchase the home based on the failure of that contingency. Defendant moved for a directed verdict because the appraisal was performed at the request of and for the benefit and guidance of the mortgagor and not the seller, and because the sellers did nothing in reliance upon the appraisal. The Trial Court denied the motion for a directed verdict on the negligent misrepresentation theory. The jury returned a verdict in favor of Plaintiffs. Recovery for the tort of negligent misrepresentation requires that the information provided by Defendant be given for Plaintiffs' benefit and guidance and that Plaintiffs justifiably rely on that information. While Plaintiffs were affected by the appraisal, it was not done for their benefit and guidance, and they did not justifiably rely upon the information. Therefore, Plaintiffs have no cause of action against the appraiser for negligent misrepresentation. The judgment is reversed, and the Complaint is dismissed.

In 1994, Mark and Cathalena Addaman (Plaintiffs), built a house in Miller's Landing subdivision in Loudon County, Tennessee. The Addamans intended to build the house, live in it for a short time, sell it, and build another house. The Addamans and their friends did most of the construction labor. In the fall of 1997, they decided to sell the house. They set the offering price by asking Mr. Jim Woodall, a local realtor, for his informal opinion about the value of the home and by ascertaining the selling price of a house two doors away which recently had been sold. The Addamans put a "For Sale" sign in the yard and placed brochures in a box beside the sign. Soon thereafter, Mr. Woodall contacted the Addamans and told them that he had clients who were interested in looking at the house. After the Addamans agreed to pay Mr. Woodall a 3% sales commission if he sold their house, he showed prospective buyers Robin and Jana Whyte the Addaman property. Negotiations between the Addamans and the Whytes ensued, and a sales contract was entered into on December 23, 1997. That contract provided that the Whytes would purchase the Addamans' house for $435,900. The sales contract was contingent upon the property being appraised through the mortgage lender for the selling price.

The Whytes sought a mortgage for the purchase of the property from Homeside Lending Company. That company, in turn, retained Lender's Service, Inc., to obtain an appraisal of the property. Lender's Service, Inc., contacted Ms. Gwendolyn Lanford (Defendant), a licensed real estate appraiser, to appraise the Addamans' property for Homeside Lending Company.

Ms. Lanford performed an appraisal of the Addamans' property after first obtaining what she believed was the information necessary to allow her to complete her appraisal. From this information, she concluded that, in her professional opinion, the property probably would appraise below the contract price. Because she knew that the potential sale was contingent upon an appraisal of at least $435,900, she contacted Mr. Woodall. Defendant thought Mr. Woodall was the Addamans' realtor. Defendant inquired whether Mr. Woodall had any information about the property which would justify raising her appraisal, which he did not. She then visited the Addamans' home on January 23, 1997, to

inspect the house and take measurements. She provided her appraisal to Lender's Service and to Homeside Lending, which notified the Whytes that the appraisal was well below the contract price. When the low appraisal resulted in their failure to obtain mortgage financing for the Addaman property, the Whytes abandoned their contract with the Addamans and purchased a nearby house for $450,000 within the next two weeks.

The Addamans then hired another appraiser, Mr. Thomas Tipton, to perform a second appraisal of their property. Mr. Tipton appraised the property as having a value of $450,000 on March 11, 1998. The Addamans filed this suit against Ms. Lanford on May 4, 1998, alleging negligent misrepresentation and breach of contract. On June 12, 1998, the Addamans listed the property with a realtor and offered it for sale at $459,900. When the case came to trial one year later, the Addamans had not had another offer to purchase the property, and it was still for sale.

Mr. Tipton testified at trial that Ms. Lanford's appraisal of the Addamans' property does not accurately represent the value of the property and is below the standard of care for residential appraisers in Loudon County, Tennessee. He described a number of factors which led him to this opinion. For instance, Ms. Lanford compared the Addaman property to property which was sold under distress circumstances.[1] She also used property that is not in a restricted subdivision and proper-ty that is fourteen miles from the Addamans' property. Mr. Tipton testified that the Federal National Mortgage Association Guidelines require that appraisers use comparable property that is located within one mile and in the same subdivision as the property being appraised. Mr. Tipton further testified that the lender, the buyer and the seller all rely on a competent appraisal in order to conduct the desired sales and mortgage transaction.

Another licensed appraiser, Mr. G.T. Ballenger, Jr., performed an appraisal of the Addamans' property for trial at Ms. Lanford's request. Mr. Ballenger opined that the subject property had a value of $380,000. Mr. Ballenger used two houses in the same subdivision and a third house which is two miles away as comparable properties for appraisal purposes.[2]

Ms. Judy Massey, a licensed realtor with Realty Executives Associates and a certified residential specialist, testified at trial that she is ranked number 30 of 1,800 realtors in the Knoxville area in terms of number of houses sold. She sold a house within five miles of the Addaman house, on lakefront property, for $459,000. She is familiar with the real estate market in the Miller's Landing subdivision. She knows that two houses near the Addamans' house sold for $423,890 and $485,000. On January 12, 1998, she listed the Addamans' house at $459,900. When the house had not sold by September 22, 1998, the offering price was reduced to $449,900. At the

1. The property had suffered "numerous defects, including water damage, stucco problems, termites and interior damage. It required multiple repairs and its price had to be drastically reduced on two occasions before it would sell. The property ultimately sold ... for only $280,000—an amount far below its initial listing price of $405,000."

2. Lanford measured and estimated that the house has 3,337 sq. ft. with a "reproduction cost of new improvements" of $59.90 per sq. ft., sitting on land valued at $113,500. Tipton opined the house has 3,164 sq. ft. at $110 per sq. ft., sitting on land valued at $100,000. Ballenger opined the house has 3,117 sq. ft., half on the first floor and half on the second floor, at $100 per sq. ft. for the first floor and $50 per sq. ft. for the second, sitting on land valued at $110,000.

time of trial, in July 1999, the offering price had just been reduced to $429,900. She opined that the offering price of the house was decreasing because the exterior is covered with synthetic stucco and recently there have been some problems with that type of exterior. When the Addamans entered into the contract with the Whytes, however, the problems with exterior synthetic stucco houses were not commonly known and should not have affected the appraisal value of the home.

The Trial Court denied Ms. Lanford's motion to dismiss and the case was tried before a jury on July 12th and 13th, 1999. The Trial Court granted Ms. Lanford's motion for directed verdict on the issue of breach of contract but overruled her motion for directed verdict on the issue of negligent misrepresentation. The jury rendered a verdict against Ms. Lanford for negligent misrepresentation and awarded the Addamans damages in the amount of $19,770. The Addamans also were awarded their discretionary costs. Ms. Lanford appeals.

*Discussion*

Ms. Lanford's issue on appeal, as restated for clarity by this Court, is whether the Trial Court erred in failing to grant her motion for a directed verdict on the negligent misrepresentation claim. Ms. Lanford argues that the Addamans' claim should have been dismissed (1) because the representations she made concerning the value of the Addamans' property were opinions, not facts; (2) because her appraisal was done solely for the benefit and guidance of Homeside Leasing and not the Addamans; (3) the Addamans failed to prove they justifiably relied upon that appraisal; and (4) because the Addamans failed to prove that her appraisal was false or that she failed to exercise reasonable care. Ms. Lanford also challenges the Tri-

al Court's award of discretionary costs to the Addamans.

Our standard of review of the Trial Court's decision on the motion for directed verdict is well-settled. A directed verdict is appropriate only when the evidence is susceptible to but one conclusion. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn.1994); *Long v. Mattingly*, 797 S.W.2d 889, 892 (Tenn.Ct.App.1990). We must "take the strongest legitimate view of the evidence favoring the opponent of the motion." *Id.* In addition, all reasonable inferences in favor of the opponent of the motion must be allowed, and all evidence contrary to the opponent's position must be disregarded. *State Farm General Ins. Co. v. Wood*, 1 S.W.3d 658, 663 (Tenn.Ct. App.1999) (quoting *Eaton*, 891 S.W.2d at 590; *Long*, 797 S.W.2d at 892). Applying these standards, we must take the strongest legitimate view of the evidence favoring the Addamans and disregard all evidence contrary to the Addamans' position.

The elements of the tort of negligent misrepresentation are described in Section 552 of the Restatement (Second) of Torts:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon this information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit

and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn.1997) (citing Restatement (Second) of Torts, § 552 (1977)). There need not be contractual privity between the plaintiff and defendant as long as the following criteria are met:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and

(2) the defendant supplies faulty information meant to guide others in their business transactions; and

(3) the defendant fails to exercise reasonable care in obtaining and communicating the information; and

(4) the plaintiff justifiably relies upon the information.

*Id.* (citing *John Martin Co. v. Morse/Diesel, Inc.,* 819 S.W.2d 428, 431 (Tenn.1991)).

█ Taking the strongest legitimate view in favor of the Addamans, and disregarding all evidence to the contrary, the testimony of the Addamans shows that they "understood Ms. Lanford's appraisal to benefit themselves as well as the Whytes and the lender and . . . relied on the appraisal to guide them through the sale of their home." An appraiser and a realtor testified that sellers rely on the prospective mortgagor's appraisal in order to sell their residence. Further, there is material evidence in the record to support the jury's finding that Defendant failed to comply with the applicable standard of care in the performance of her appraisal.

This proof, however, falls far short of establishing the element of justifiable reliance as contemplated by the Restatement. Indeed, the cases relied upon by the Addamans [3] involve the issue of justifiable reliance of *buyers,* and in those cases, the buyers did something, i.e., they purchased real property, in reliance upon the representations of professionals as to that property's title or value. This Court considered a factually similar situation in *McGaugh v. Galbreath,* 996 S.W.2d 186 (Tenn.Ct.App.1998). In that case, Mr. Galbreath sued a bank and its attorney, Mr. Lawless, who gave an inaccurate title opinion concerning real property which Mr. Galbreath was attempting to sell to Mr. McGaugh. We upheld the Trial Court's dismissal of Mr. Galbreath's suit for negligent misrepresentation against the bank and its attorney because Mr. Galbreath failed to prove that he justifiably relied on the title opinion:

The problem here is that Mr. Galbreath is not the right plaintiff for a negligent misrepresentation claim. Certainly Mr. Lawless was acting in the course of his profession as an attorney in advising the Bank and therefore Mr. McGaugh about the clouded title. Assuming that this advice was "faulty information" and that Mr. Lawless failed to exercise reasonable care in obtaining it, it was not given for Mr. Galbreath's benefit nor did he do anything in reliance on this advice. The supreme court noted that when courts have allowed non-clients to recover un-

---

**3.** *Collins v. Binkley,* 750 S.W.2d 737 (Tenn. 1988); *Tartera v. Palumbo,* 224 Tenn. 262, 453 S.W.2d 780 (1970); *Young v. Leader Fed. Sav. and Loan Ass'n., Inc.,* 1989 WL 67205 (Tenn.Ct.App.1989); *Costa v. Neimon,* 123 Wis.2d 410, 366 N.W.2d 896, 898 (Wis.App. 1985).

der the theory of negligent misrepresentation, it has been situations where "the advice was given *for the guidance of the plaintiffs* in the course of the real estate transaction and reliance upon that advice was justifiable and foreseeable." *Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn.1997) (citing *Collins v. Binkley,* 750 S.W.2d 737 (Tenn.1988); *Stinson v. Brand,* 738 S.W.2d 186 (Tenn.1987)). While Mr. Galbreath may have been *affected,* he did not *"justifiably rely* upon the information" and therefore cannot recover against Mr. Lawless under a theory of negligent misrepresentation. *McGaugh v. Galbreath,* 996 S.W.2d 186, 192 (Tenn.Ct.App.1998)(emphasis added).

Like the title opinion in *McGaugh,* the appraisal in this case was obtained for the benefit and guidance of the mortgagor and not the sellers—the Addamans. Even assuming that the appraisal was negligently performed, there is no evidence in the record that the Addamans took any action, or refrained from taking any action, in reliance upon the appraisal. Even though they certainly were affected by the appraisal, the appraisal was not performed for their benefit and guidance, and they did not do anything in reliance on it. The exact same outcome, no sale to the Whytes, would have occurred whether or not the Addamans ever knew the information and opinion contained in Defendant's appraisal. Whether the Addamans knew the value placed by Defendant on their property would in no way have affected whether or not the sale proceeded. The appraisal never was given for the guidance of the Addamans. The Addamans never did anything in reliance on this appraisal. As in *McGaugh,* Plaintiffs "may have been affected ... [but they] did not 'justifiably rely upon the information' and therefore cannot recover ... under a theory of negligent misrepresentation." *Id.*

Accordingly, we hold the Trial Court erred in failing to grant Ms. Lanford's motion for a directed verdict. As Ms. Lanford is now the prevailing party in this case, the Trial Court's award of discretionary costs to the Addamans is reversed pursuant to Rule 54.04(2), Tennessee Rules of Civil Procedure.

### CONCLUSION

The judgment of the Trial Court is reversed, and this case is dismissed. The costs on appeal are assessed against the Appellees, Mark Addaman and Cathalena Addaman.