# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### SEPTEMBER 12, 2007 Session

## JEFF MILLER and wife, JANICE MILLER, each individually, and as surviving parents and next of kin of the minor, WILLIAM J. MILLER, deceased v. BEATY LUMBER, INC.

### Direct Appeal from the Circuit Court for Fentress County
### No. 8009      John D. McAfee, Judge

---

### No. M2007-00253-COA-R3-CV - Filed December 20, 2007

---

This is a negligence case that resulted in a directed verdict for the defendant. The plaintiff's minor son was killed when the truck he was riding in collided with a logging truck pulling the defendant's load of logs. All parties involved in the accident died, and there were no eyewitnesses. The plaintiffs filed suit against the defendant on behalf of their deceased son. At trial, the defendant moved for a directed verdict, which the court granted. The plaintiffs now appeal, alleging that the trial court applied the wrong standard when it granted the directed verdict. Next, the plaintiffs argue that the court should have applied the theory of joint and several liability because the case involved concurrent negligence resulting in an indivisible harm. Finally, the plaintiffs argue that the court erred by excluding evidence relating to the defendant's liability insurance. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which W. FRANK CRAWFORD, J., and DAVID R. FARMER, J., joined.

D. Michael Kress, II, Sparta, TN, for Appellants

John M. Lawhorn, Knoxville, TN, for Appellee

John A. Day, Brentwood, TN, for *Amicus Curiae* Tennessee Association for Justice

## OPINION

## I. FACTS & PROCEDURAL HISTORY

On December 3, 2002, Jeff and Janice Miller's ("Appellants" or "the Millers") seventeen year old son was killed in a vehicular collision involving a pickup truck and a logging truck at the intersection of Highway 127 and Highway 62 in Clarkrange, Tennessee. The logging truck was driven by Charles Oscar Smith ("Smith"), pulling a trailer of logs owned by Beaty Lumber, Inc. ("Appellee" or "Beaty Lumber"). The pickup truck was driven by Gentry Shelton. The Millers' son and Joshua Hatfield were both passengers in this pickup truck. At 2:40 a.m., the pickup truck and logging truck collided. There were no eye witnesses to the accident, and all four individuals involved in the crash died.

The Millers filed suit against Beaty Lumber; Smith's estate; the administrator *ad litem* for Gentry Shelton's estate; and "John Doe." The complaint alleged several theories of negligence, including, but not limited to, the following: that Smith negligently operated his vehicle; that Smith was speeding; that the brakes on Smith's vehicle were deficient; and that Beaty Lumber failed to properly inspect Smith's vehicle's brakes. The complaint also alleged that the defendants were negligent *per se* in violation of several statutes. The case was consolidated with other lawsuits filed by other parties arising out of the same collision, but each of these other suits was settled or dismissed prior to trial. The Millers proceeded solely against Beaty Lumber.

The trial commenced on December 11, 2006, in Jamestown, Tennessee. The parties were in agreement that Smith's logging truck was traveling south at the time of the collision; however, the parties disagreed as to the direction of the pick-up truck at the moment of impact. Beaty Lumber's position was that the pick-up truck, traveling north, attempted to make a left turn onto Highway 62 at the time of the collision with Smith. The Millers, on the other hand, took the position that the pickup truck was traveling east to west along Highway 62, continuing straight through the intersection at the time of the collision.

Trooper David Roark ("Trooper Roark"), called by the Millers, testified that he responded to the accident on December 3, 2002, and that he assisted in the accident reconstruction. The parties stipulated that Trooper Roark was an expert in accident reconstruction. Trooper Roark photographed the scene and assisted with the "crush analysis" on the vehicles, but he did not perform the reconstruction. The reconstruction was performed by Sergeant Norris,[1] but Trooper Roark testified that he "did assist [Sergeant Norris] with that decision making, and I agree with his decision." Sergeant Norris did not testify at trial. Trooper Roark prepared a "thrust diagram," which as far as he knew, Sergeant Norris used in determining the direction of both vehicles in the accident reconstruction. He testified that a thrust diagram is prepared to show what the officer believed was the direction of the initial impact. Trooper Roark testified that it was the opinion of Sergeant Norris that the pick-up truck was traveling north to south on Highway 127, and that the pickup truck

---

[1] Neither party used Sergeant Norris' first name in their brief, nor can we find in the record this individual's first name.

attempted a left turn in front of the logging truck. The logging truck turned over upon impact, and the trailer caught fire. As to the damage of the logging truck's bumper, Trooper Roark testified that he was unable to determine whether the damage was caused by the initial impact between the two vehicles or from the impact with the embankment after the logging truck rolled. Trooper Roark did not check the brakes on the logging truck or on the logging truck's trailer, but on cross examination, he testified that another officer performed that check. On cross-examination, Trooper Roark testified that he knew of no evidence indicating that either the logging truck or the pickup truck was speeding, nor was there any skid marks from braking found at the scene.

The Millers' expert in accident reconstruction, David A. Stopper ("Stopper"), testified that three of the four brakes on Smith's trailer lacked effective brake force. Stopper was unable to test the brakes on the front axle of the logging truck.[2] As to the direction of travel of the pickup truck, Stopper disagreed with Trooper Norris and Trooper Roark's opinion that the pickup truck was making a left turn. Stopper testified that it was his opinion, based on the shape of the logging truck's bumper, that the collision was a side impact. Stopper's opinion was that the pickup truck was traveling from east to west at the moment of impact.

The speed limits on Highway 127 and Highway 62 were posted at 55 miles per hour. On cross examination, Stopper testified that he could not determine the speed of either the pickup truck or the logging truck as they approached the intersection prior to the collision. He testified that he also saw no skid marks at the scene of the collision, but that despite this fact, either or both parties might have applied their brakes prior to impact, just that "[w]e don't have physical evidence that tells us that that, [sic] in fact, occurred." Nor could Mr. Stopper determine which vehicle had the red light.

Stopper next testified that the minimum safety standards under the Federal Motor Carrier Safety Regulations, as implemented by Tennessee, required Smith to keep a proper watch, "looking twelve to fifteen seconds ahead to prepare for potential hazards and to be able to react within those distances if possible." He testified that these "visual search techniques" are skills required "for the commercial driver's license standards."

The parties stipulated that Beaty Lumber would be vicariously liable for any negligence attributable to Smith, and the following was read to the jury at the close of the first day:

> The parties further stipulate that . . . Charles Oscar Smith was a statutory employee of Beaty Lumber, Inc. and Beaty Lumber, Inc. was a statutory employer of Charles Oscar Smith at the time of the collision which is the subject of this case. That parties further stipulate that if there is negligence attributed to Charles Oscar Smith

---

[2] Stopper conducted his inspection fifteen to sixteen months after the accident. The front axle, at that point, had been dislodged from the truck and could not be found at the salvage yard, where the truck was located.

such negligence is imputed to Beaty Lumber, Inc. by virtue of the
doctrine of *respondeat superior*.

Subsequently, the Millers' counsel questioned Beaty Lumber's vice president, Tim Beaty, who
testified that Smith was hired as an independent contractor to haul logs for Beaty Lumber. Tim Beaty
testified that he "had no idea that I have to take responsibility for another truck, another driver. The
truck wasn't mine; the tags wasn't in Beaty Lumber's name; . . . ." Out of the presence of the jury,
the Millers' attorney argued that he should be allowed to question the witness concerning Beaty
Lumber's liability insurance because Tim Beaty's testimony that Smith was an independent
contractor contradicted the stipulation that Smith was an employee. The Millers' attorney argued
that he wanted to show proof of Beaty Lumber's "control" pursuant to Rule 411 of the Tennessee
Rules of Evidence. The court excluded the Millers' attorney from asking any questions concerning
Beaty Lumber's liability insurance.

On December 12, the court asked Beaty Lumber's counsel if they were planning on making
a motion for a directed verdict. The Millers' attorney agreed that they "had offered all testimony and
exhibits they intended to present on the issues of negligence and causation," and then Beaty Lumber
moved for a directed verdict, which the court granted. The court entered its judgment of directed
verdict on January 11, 2007, which states, in relevant part, as follows:

> The Court then heard argument of counsel with respect to said
> motion, and upon consideration of the full trial record, found there
> was no material evidence in the trial record that would support a
> verdict for the plaintiffs. Specifically, the Court found there was no
> material evidence that any alleged negligence on the part of defendant
> Beaty Lumber, or its agent, Charles Oscar Smith, was a cause-in-fact,
> and/or proximate cause of the motor vehicle accident in which
> plaintiff's decedent perished. As plaintiffs bear the burden of proof
> with respect to causation-in-fact and proximate causation, the Court
> therefore found that defendant's motion for directed verdict was well
> taken, and due to be GRANTED.

This appeal timely followed.

## II.   ISSUE PRESENTED

Appellant presents the following issues for review, which we slightly reword:

1.      Whether the trial court erred by applying the wrong standard of review for a directed verdict.

2.      Whether the trial court erred by failing to apply principles of joint and several liability where concurrent negligence resulted in indivisible harm.

3.      Whether the trial court erred by excluding evidence relating to Beaty Lumber's liability insurance.

## III.  STANDARD OF REVIEW

This Court, when reviewing the lower court's decision on a motion for a directed verdict, will not reweigh the evidence, nor will we evaluate the credibility of the witnesses. *In re Estate of Marks*, 187 S.W.3d 21, 27 (Tenn. Ct. App. 2005). We apply the same standard as the trial court and review the "evidence in the light most favorable to the motion's opponent, give the motion's opponent the benefit of all reasonable inferences, and disregard all evidence contrary to that party's position." *Id.* (citations omitted); *see also Gaston v. Tennessee Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003) ("Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict."); *Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citing *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Addaman v. Lanford*, 46 S.W.3d 199, 203 (Tenn. Ct. App. 2000)). Trial courts should only enter a directed verdict when reasonable minds could only draw the same conclusion from the facts. *In re Estate of Marks*, 187 S.W.3d at 27. "A directed verdict is appropriate only when the evidence in the case is susceptible to but one conclusion." *Helton v. Glenn Enterprises, Inc.*, 209 S.W.3d 619, 624 (Tenn. Ct. App. 2006) (quotation omitted).

A trial court may properly direct a verdict "with regard to an issue that can properly be decided as a question of law because deciding purely legal questions is the court's responsibility, not the jury's." *In re Estate of Marks*, 187 S.W.3d at 27; *see also Burton v. Warren Farmers Co-op*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002). Thus, as to any questions of law, our review is de novo upon the record with no presumption of correctness given to the trial court's conclusions. *Helton*, 209 S.W.3d at 624.

## IV.  DISCUSSION

The Millers argue that the trial court applied an improper standard when it granted Beaty Lumber's motion for a directed verdict. Specifically, the Millers argue that the trial court weighed the evidence and failed to disregard countervailing evidence.

Disregarding all contrary evidence, including Trooper Roark's testimony,[3] we find that a directed verdict in this case is appropriate. Reasonable minds could only draw but one conclusion that there is absolutely no evidence of a causal connection between Smith's purported negligent conduct and the accident.[4] Absent pure speculation, there is no evidence what, if any, negligent conduct caused the accident or which party's negligent conduct caused the accident. The plaintiff's evidence must go beyond mere speculation that the defendant's conduct caused the harm. *See Edwards v. Miller*, NO. 03A01-9512-CV-00457, 1996 WL 200634, at *2 (Tenn. Ct. App. Apr. 26, 1996). At trial, the Millers did raise the issue of the deficient brakes, but they failed to link the deficiency to the accident. The Millers argue that "evidence of a vehicle's deficient brakes at the time of a collision calls for a jury's consideration, and is not a matter upon which the trial Court may properly direct a verdict." They cite to *Getz v. Weiss*, but the Millers' attorney has misstated that

---

[3] The Millers argue in their brief that Tropper Roark's testimony concerning Sergeant Norris' accident reconstruction was inadmissible hearsay and that "due process requires an opportunity to confront and cross-examine adverse witnesses. It is submitted that due process was lacking in this instance." The Millers cite to *Tenent v. Tenent* as support for such a contention, but that case is not on point. In *Tenent*, the husband admitted to committing perjury during the divorce proceedings, and the trial court prohibited him from "testifying, cross-examining witnesses, presenting witnesses in his own behalf, or participating in the trial in any manner." *Tenent v. Tenent*, No. 02A01-9305-CV-0017, 1994 WL 317531, at *3 (Tenn. Ct. App. July 6, 1994). This Court held that "the due process clause assures a full hearing before the court or other tribunal empowered to perform the judicial function involved. That includes the right to introduce evidence and have judicial findings based upon it." *Id.* at *3. We point out that the Millers called Trooper Roark as a witness and asked the questions concerning the accident reconstruction, so we find it difficult to see how they now claim a constitutional violation related to testimony in which their own attorney elicited. In any event, we, as the reviewing court, discount all countervailing evidence when reviewing a lower court's decision to direct a verdict.

[4] Even if the proper standard of causation is the substantial factor test as the Millers advocate, there is still no evidence that Smith's purported negligent conduct was a substantial factor in causing the harm to the Millers' son. The Middle Section of this Court, in discussing the Second Restatement of Torts, stated the following:

> [T]he 'substantial factor' test, like the 'but for' test, incorporates the concept that conduct cannot be a cause in fact of an injury if the injury would still have occurred even if the conduct had never taken place. Both the 'but for' test and the 'substantial factor' test recognize that *conduct must be a 'necessary antecedent' to an injury in order to be considered a cause in fact of the injury.*

*Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.*, 15 S.W.3d 425, 432 (Tenn. Ct. App. 1997) (emphasis added and citation omitted). The Restatement Second of Torts section 432(2) goes on to define a "necessary antecedent" as follows: "[i]f two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, *and each of itself is sufficient to bring about harm to another*, the actor's negligence may be found to be a substantial factor in bringing it about." Even if the trial court should have applied the substantial factor test, a directed verdict would still be appropriate because the Millers failed to show that Smith's negligence was itself sufficient to bring about the harm. In other words, they still run into the problem of offering no evidence of causal connection linking Smith's alleged negligent conduct to the injury.

holding. In that case, there was evidence of a causal connection between the defective brakes and the accident:

> And there was some evidence that tended to show that the defendant's brakes were not in good state of repair. They had not been examined within a year, and *there was evidence that a car running 30 miles per hour could have been stopped within 28 feet if its brakes were in good order.* The street was 32 feet wide. *The [skid] marks* began 9 feet west of the intersection and led across the intersection a distance of 62 feet to the point where the car stopped; hence we are of the opinion that the court erred in striking these counts with respect to the brakes, as they may be shown by circumstantial evidence to have been defective.

***Getz v. Weiss***, 25 Tenn. App. 520, 160 S.W.2d 438, 443 (Tenn. Ct. App. 1941) (emphasis added). We agree with Beaty Lumber that the Miller's expert witness, Stopper,[5] failed to testify that the deficient brake condition in any way contributed to or caused the accident.

Stopper also testified as to the purported standard of care in keeping a proper lookout, but he did not testify that Smith violated this standard or that Smith's violation was the cause of the accident. There was no testimony that Smith failed to keep a proper lookout.[6] Nor was there any evidence that Smith was speeding at the time of the accident or that he ran the red light. Stopper testified that the pickup truck was traveling east to west, but Stopper never explained how the pickup truck's westbound direction of travel made it more likely that the accident occurred as a result of Smith's conduct.

The Millers argue in their brief that "the cause-in-fact of the Plaintiffs' damages was the collisions between the two vehicles." Similarly, they argue in their reply brief that "[o]ne need not strenuously labor to determine that 'but for' the act of the logging truck driver having entered the

---

[5] The Millers attempt to raise a new issue in their reply brief concerning photographs discussed by Stopper and introduced into evidence. They claim that "the Plaintiffs were not permitted to pass many of their photographs, regarding the condition of the subject logging truck, [to the jury] as they were admitted into evidence . . . ." Pursuant to Rule 27(c) of the Tennessee Rules of Appellate Procedure, reply briefs are designated for the response to the appellee's brief. "Generally speaking, it is not the office of a reply brief to raise issues on appeal." ***Gentry v. Gentry***, No. E2000-02714-COA-R3-CV, 2001 WL 839714, at *4 n.3 (Tenn. Ct. App. July 25, 2001). Although it does appear from the transcript that the jury later had an opportunity to view all the evidence, we need not address the issue.

[6] The Millers cite to ***McElroy v. Sharp*** in support of their contention that "it is a question for a jury to determine whether one or more drivers in a multi-vehicle collision[ ] failed to keep a proper lookout[.]" Again, the Millers have misread that case. In ***McElroy***, the issue was one of proximate cause, as causation in fact was not in dispute: "even though both parties [were] violating the law, it is still a question for the jury to determine what the proximate cause of the collision resulting in the injury was, and the violation of which one constituted the proximate cause, . . . ." ***McElroy v. Sharp***, No. E2000-02708-COA-R3-CV, 2001 WL 1180604, at *2 (Tenn. Ct. App. Oct. 8, 2001) (quotation omitted).

intersection, the collision would not have occurred and the Plaintiffs' son would not have been killed." The Millers' brief misstates the issue. The Millers must point to some negligent conduct – such as defective brakes or the failure to keep a proper lookout – and but for that conduct, the injury would not have occurred. "While there may be different degrees of liability or fault, specific conduct is either a cause in fact, or it is not." ***Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.***, 15 S.W.3d 425, 433 (Tenn. Ct. App. 1997). The fact that Smith was operating his vehicle and the accident occurred is simply not enough. "[I]t is well to recall the rule that negligence cannot be inferred from the mere fact of the occurrence of the injury alone. . . . Further, it is well-settled that the mere fact that an accident resulted in an injury to a plaintiff does not raise a presumption that a defendant was guilty of negligence . . . ." ***Edwards v. Miller***, NO. 03A01-9512-CV-00457, 1996 WL 200634, at \*2 (Tenn. Ct. App. Apr. 26, 1996). While this is a tragic case, there simply was not enough evidence produced at trial to survive a motion for a directed verdict.

The Millers argue in their brief that the trial court "improperly removed the issue of proximate cause from the sacred province of the jury," but we point out that there is a great difference between causation and proximate cause:

> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.'" (internal citations and quotations omitted).

***Smith v. Cherry***, No. M2005-01168-COA-R3-CV, 2006 WL 1724629, at \*4 (Tenn. Ct. App. Nov. 6, 2006). And while we agree that the issue of proximate cause is generally a question for the jury, ***Kim v. Boucher***, 55 S.W.3d 551, 556 (Tenn. Ct. App. 2001), the Millers failed to establish a causal connection. Thus, the issue of proximate cause is not even reached. *See **Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.***, 15 S.W.3d 425, 430 (Tenn. Ct. App.1997) ( "no negligence claim can succeed unless the plaintiff can first prove that the defendant's conduct was the cause in fact of the plaintiff's loss.").

Based upon the record, we find that the plaintiff failed to produce any evidence relating to causation, a necessary element of negligence. Thus, we need not address the issue of joint and several liability, or the issue raised by the Tennessee Association for Justice in their *amicus curiae*

brief that joint and several liability should apply when the plaintiff is without fault. Nor do we need to address whether the exclusion of evidence relating to Beaty Lumber's insurance was error.

## V. CONCLUSION

For the aforementioned reasons, we affirm. Costs of this appeal are taxed to Appellants, Jeff Miller and Janice Miller, and their surety for which execution may issue if necessary.

_____ ALAN E. HIGHERS, P.J., W.S.