**DYNAMIC MOTEL MANAGEMENT, INC.**

v.

**Samuel G. ERWIN.**

Court of Appeals of Tennessee,
Eastern Section.

June 5, 1975.

Certiorari Denied by Supreme Court
Sept. 22, 1975.

Thomas S. Kale and Fred H. Moore, of Spears, Moore, Rebman & Williams, Chattanooga, for appellant.

Harry Berke, of Berke, Berke & Berke, Chattanooga, for appellee.

## OPINION

SANDERS, Judge.

Appellant has appealed from a jury verdict of treble damages for procuring the breach of a contract under T.C.A. § 47–15–113.

The original Plaintiff and Appellant is the owner of the Downtowner Motel in Chattanooga and the original Defendant and Appellee is the owner of the Flaming Sword Restaurant which he operates in a portion of the motel leased from the Plaintiff.

The Plaintiff filed suit against the Defendant alleging he had breached the provisions of the lease and sought to recover possession of the premises.

The Defendant answered denying a breach of the lease and filed a cross-action in which he alleged that the Plaintiff induced prospective purchasers of his restaurant to breach their contract to purchase in violation of T.C.A. § 47–15–113 and seeks treble damages under the Code provision.

The case was tried before a jury in the Circuit Court of Hamilton County with The Honorable Samuel H. Payne presiding.

The jury found the issues in favor of the Defendant, both in the original complaint and on the cross-action. The Plaintiff's suit for possession of the premises was dismissed and the jury fixed the Defendant's actual damages under the cross-action at $15,-000.00, resulting in a total judgment of $45,000.00.

Plaintiff's motion for a new trial was overruled and it has appealed and assigned error.

The Plaintiff appealed and assigned error as to the action of the Court and jury on both the issue of the alleged breach of the lease and its right to possession of the premises and the cross-action for treble damages.

Upon argument of the case, however, counsel advised the Court that the question of the Plaintiff's right to possession of the premises had become moot since the appeal was perfected and the only remaining question for determination by this court was the question of treble damages.

The thrust of the Plaintiff's assignments of error relating to damages is there is no evidence so support the finding of the jury that Plaintiff had induced the breach of a contract.

T.C.A. § 47–15–113 provides as follows:

"PROCUREMENT OF BREACH OF CONTRACTS UNLAWFUL—TREBLE DAMAGES.—It shall be unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation,

refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of said contract; and the party injured by such breach may bring his suit for said breach and for such damages."

The proof shows that the Defendant purchased the restaurant known as the Flaming Sword in June, 1973. At the time he purchased the restaurant the former owner was the lessee of the premises in which it was located and it was necessary to secure the approval of the Plaintiff before the lease could be assigned. In this regard the lease provides as follows: "The parties mutually agree that the Lessees shall not assign this lease or sublet the premises covered by this lease or any portion thereof, without first obtaining the written consent of the Lessor to do so, which consent shall not be unreasonably withheld."

As a condition to approving the transfer of the lease, the Plaintiff required the Defendant to agree that within 90 days of occupancy he would install a mixed-drink bar and would refurbish the entire restaurant and repair certain furniture so as to upgrade the rating of the restaurant from a "B" to an "A" rating.

The Defendant went into possession of the premises on June 1 but he failed to install the mixed-drink bar and failed to refurbish the restaurant to the satisfaction of the Plaintiff. This led to considerable controversy between the parties, resulting in threats by the Plaintiff to terminate the lease and a desire on behalf of the Defendant to sell the restaurant.

The Defendant and Plaintiff discussed the possibility of the Plaintiff's purchasing the restaurant but no agreement was ever reached.

The Defendant testified that he had four other prospective purchasers for the restaurant but because the Plaintiff would not agree to transfer the lease he was deprived in each instance of making the sale.

While the proof shows that two of the prospective purchasers were willing to pay the amount the Defendant was asking for the restaurant, there is no proof that a valid, binding contract ever existed between them and the Defendant.

Mr. James L. Jones testified that he was interested in purchasing the restaurant and when he talked with the Plaintiff's motel manager about approval of transferring the lease he was refused. The pertinent portion of his testimony on direct examination was as follows:

"Q I'll ask you if you became interested in the purchase of the Downtowner Motel?

"A About a year ago roughly.

"Q The restaurant there?

"A Yes, I approached the Erwins. Well, really, about a partnership in the thing, and they were not interested in the partnership, they wanted to sell out altogether. So they told me to see the innkeeper, a gentleman by the name of Rainwater, and I approached him, and he told me that he would not be interested at all, that the company was going to take the restaurant over, and so that was the extent of it.

"Q Had you and Mr. Erwin agreed on the price—

"A (Interposing) Yes.

"Q —for the restaurant?

"A Yes, $25,000.00."

On cross-examination he testified:

"Q All right, now, in your purchase price of $25,000.00, what was the profitability of the restaurant that they showed you?

"A Well, in other words, that included the equipment.

"Q All right, did they actually discuss what they paid each month, and

what their expenses were each month, and how much their profit was?

"A Well, we really didn't go into too many details because when I was turned down, you know, there was not much use in going into that."

\* \* \* \* \* \*

"Q Okay, would it astound you to find out that their outstanding debts to Mr. Paul Georgeson might be in the amount of $14,000.00 or more?

"A Yes.

"Q And for $25,000.00 you might have been buying a lot of trouble, might you not?

"A This could be.

"Q So you would have much, much more considered that figure than simply saying I'll buy it for twenty-five?

"A Well, like I say, we never really got into the details because there wasn't no use in it, because it was refused."

Mr. Larry Culber also testified that he was interested in purchasing the restaurant for $25,000.00 but when he contacted the motel manager about transferring the lease he was advised that approval could not be obtained. As a result of his conversations with the motel manager, he and the Defendant never got into details concerning the sale. On this point he testified:

"Q (Interposing) You were going to buy the assets, I take it?

"A The assets, and the goodwill, that's all there was.

"Q All right, and wouldn't you have been interested to know whether or not there was any tax lien on those assets?

"A My C.P.A. would have taken care of that had we kept on going, which is Reece Donaldson, he—I don't do anything without my C.P.A. checking everything out for me.

"Q He didn't check this out?

"A We didn't never get that far.

"Q You didn't get that far?

"A No, because I was discouraged about it, they just said it couldn't be bought."

We think the greater weight of authority supports the proposition of law that before there can be a recovery for interference in the performance or the procurement of the breach of a contract, as contemplated by T.C.A. § 47–15–113, the following criteria must be met:

1. There must be a legal contract.

2. The wrongdoer must have knowledge of the existence of the contract.

3. There must be an intention to induce its breach.

4. The wrongdoer must have acted maliciously.

5. There must be a breach of the contract.

6. The act complained of must be the proximate cause of the breach of the contract.

7. There must have been damages resulting from the breach of the contract.

45 Am.Jur.2d, Interference §§ 3, 4, 5, 6, 7 and 11.

In considering the Plaintiff's assignments of error, we are mindful that we are reviewing a jury verdict. In the review of a judgment based on a jury verdict the appellate courts do not weigh the evidence or decide where the preponderance lies, but merely determine whether there is material evidence to support the verdict. *City of Chattanooga v. Rogers*, 201 Tenn. 403, 299 S.W.2d 660; *Dorrity v. Mann*, 43 Tenn.App. 554, 310 S.W.2d 191.

In determining whether there is material evidence to support the verdict we are required to take the strongest legitimate view of all of the evidence in favor of the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. *D. M. Rose &*

*Co. v. Snyder,* 185 Tenn. 499, 206 S.W.2d 897. If there is any material evidence to support the verdict it must be affirmed. *City of Chattanooga v. Ballew,* 49 Tenn. App. 310, 354 S.W.2d 806.

In our consideration of the evidence most favorable to the Defendant, we think it shows that both Mr. Jones and Mr. Culber would have been interested in buying the restaurant for $25,000.00 if the Plaintiff would have consented to an assignment of the lease and because consent was withheld no agreement was ever reached.

Also, we think the proof shows that the Plaintiff had knowledge of Messrs. Jones' and Culber's interest in purchasing the restaurant but there was no proof of its knowledge as to the existence of a contract between either of them and the Defendant. Absent knowledge of the existence of a contract, there could have been no intention to induce its breach.

The assignment of error is sustained.

Judgment of the Trial Court is reversed and the Defendant's cross-action is dismissed.

The cost of this appeal is taxed to the Appellee.

PARROTT, P. J. (E. S.), and GODDARD, J., concur.