IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 21, 2017 Session

## LEIGH ANN URBANAVAGE, ET AL. v. CAPITAL BANK, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 14-604-IV      Russell T. Perkins, Chancellor**

_____

### No. M2016-01363-COA-R3-CV

_____

Homeowners in housing development brought suit against their homeowners association, its directors and the bank that assumed management of the development after the developers defaulted on their loans used to finance the development; the homeowners sought damages and other relief arising from the defendants' alleged failure to fulfill their obligations to properly maintain the subdivision. Plaintiffs asserted claims for tortious interference with their contract rights, breach of fiduciary duties, invalid liens, and slander of title. The court granted summary judgment to the defendants on the various claims, and plaintiffs appeal. We reverse the grant of summary judgment to the bank on plaintiffs' claim of tortious interference, and to the homeowners association on its counterclaim for recovery of delinquent assessments; we vacate the award of counsel fees to the association and the order quashing the notice of deposition of a director of the association and the association's counsel; in all other respects we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Vacated in Part, and Reversed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Robert E. Motsenbocker, Thompson's Station, Tennessee, for the appellants, Leigh Ann Urbanavage and Amanda Falk Cook.

Sam J. McAllester, Anne C. Martin, and Mandy Strickland Floyd, Nashville, Tennessee, for the appellee, Capital Bank.

Thomas H. Peebles, IV, and Jacquelyne D. Fiala, Nashville, Tennessee, for the appellee, Carothers Crossing Neighborhood Association, Inc.

Samuel T. Bowman and Sarah D. Murray, Nashville, Tennessee, for the appellees, Carothers Crossing Neighborhood Association, Inc., Lonnie E. Malone, Jim D. Evans, and Ann Vanderhoof.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

From December 14, 2005 through January 7, 2008, Wood Ridge Development Inc., ("WRD") and Woodridge Investments, LLC, ("WRI"), entities in which Edward M. Richey and Don B. Smithson each owned a fifty percent membership interest, borrowed funds to develop Carothers Crossing, a "traditional neighborhood development" in the cities of Lavergne and Nashville, Tennessee; GreenBank, was the original lender.[1] WRD and WRI executed notes and entered into loan agreements memorializing the debts and obligations, which were secured by the individual guarantees of Mr. Richey and Mr. Smithson. On June 27, 2007, WRD recorded various documents relating to the development, including the Declaration of Charter, Easements, Covenants and Restrictions ("the Declaration"), Master Deed Restrictions, and the By-Laws of the Carothers Crossing Neighborhood Association ("the Association"); in due course, WRD appointed the initial Board of Directors of the Association. The development ran into financial difficulty and on January 14, 2010, GreenBank sued WRI, WRD, Don B. Smithson, and Edward M. Richey, in Davidson County Chancery Court to collect the unpaid balances of the notes; WRI and WRD filed for bankruptcy on January 15, 2010.

On March 5, 2010, WRD, WRI, Mr. Smithson, Mr. Richey, and Capstone Homebuilders Group, LLC, which had also borrowed funds from GreenBank, entered into a Settlement Agreement and Release of Claims. The Settlement Agreement was presented to the bankruptcy court, and when approved by that court, it granted GreenBank relief from the bankruptcy stay and allowed it to proceed with foreclosure; on March 26, Trustee's deeds conveyed the Carothers Crossing property to GreenBank.[2]

Leigh Ann Urbanavage purchased lot 84 in Carothers Crossing on May 8, 2008, and Amanda Falk Cook (then Amanda Fay Falk) purchased lot 79 on June 26, 2008; by purchasing lots, Ms. Urbanavage and Ms. Cook became members of the Association. In March 2010, following a decline in the maintenance of the common areas, Ms. Urbanavage and Ms. Cook stopped paying their HOA fees; liens were placed on their properties by the Association to secure payment of the fees.

On July 22, 2014, Ms. Urbanavage and Ms. Cook ("Plaintiffs") filed their "First Amended Complaint"[3] ("complaint") against Capital Bank, the Association, and Lonnie

---

[1] In September 2011, GreenBank merged with Capital Bank, and Capital Bank became successor in interest to GreenBank.

[2] The conveyances were made subject to, *inter alia*, the original Declarations, Supplemental Declarations, and First Amendment to the Declarations.

[3] The original complaint is not in the record on appeal.

2

Malone, Jim Evans, and Ann Vanderhoof, who were Capital Bank employees who were appointed by the bank to serve as directors of the Association ("the Association Directors"). The complaint alleged that Capital Bank breached its fiduciary duty to Plaintiffs, tortiously interfered with the Association's obligations under the Declaration, and breached the Master Deed Restrictions and Declaration; the complaint also alleged that the Association Directors breached their fiduciary duties to Plaintiffs, and the Association Directors caused invalid liens to be filed against Plaintiffs and slandered Plaintiffs' titles.

The Association, Capital Bank, and the Association Directors answered, denying Plaintiffs' allegations; the Association also filed a counter-claim for unpaid association fees, prejudgment interest, late fees, and attorney's fees. [4] Subsequently, the Association, Capital Bank, and the Association Directors moved for summary judgment on Plaintiffs' claims; the Association sought summary judgment on its counter-claims as well.

Following a hearing, the court granted summary judgment to the Association Directors on the breach of fiduciary duty claim on the ground that they were immune from suit under Tennessee Code Annotated section 48-58-601(c); granted summary judgment to Capital Bank on the claims of breach of fiduciary duty, tortious interference, invalid liens, and slander of title; and granted summary judgment to the Association on its counterclaim. The court subsequently entered an "Additional Order," granting the Association summary judgment on all claims on the ground that no causes of action remained against the Association separate and apart from those asserted against the individual directors, and another "Additional Order" in which the parties agreed to entry of summary judgment to Capital Bank on the breach of contract claim.

Following entry of the order granting summary judgment, the Association filed a motion for Attorneys' Fees, Interest, and Discretionary Costs and supporting affidavits from Thomas Peebles, counsel for the Association with regard to its counterclaim, as well as affidavits of two local attorneys, Anne C. Martin and Samuel T. Bowman. The Association requested $81,364.22 in attorneys' fees and $58.34 in discretionary costs to be split evenly between both Plaintiffs, $15,159.36 in unpaid assessments and $1,435.61 in interest against Ms. Urbanavage, and $13,995.36 in unpaid assessments and $1,399.56 in interest against Ms. Cook. Plaintiffs served notices of deposition on Thomas Peebles and an unnamed member of the Board of Directors. The Association filed a Motion to Quash Notices of Depositions, which was granted by the trial court. [5]

---

[4] Throughout this litigation, the Association and the Association Directors have been represented by different counsel.

[5] In the order the court stated:

> The Court further finds that the proposed taking of the deposition of CCNA's counsel, as well as a member of CCNA's Board of Directors, is not reasonably calculated to lead to the discovery of admissible evidence. The Court also finds that no depositions are

3

The court thereafter entered judgment in favor of the Association against each Plaintiff for unpaid assessments, discretionary costs, pre-judgment interest, and 60 percent of the Association's attorneys' fees. A final order was entered on May 31, 2016.

Plaintiffs appeal the grant of summary judgment on their tortious interference claim against Capital Bank; and the breach of fiduciary duty claim against the Association Directors. Plaintiffs appeal the grant of summary judgment to the Association on the grounds that no claims remained against the Association after the grant of summary judgment to the Association Directors, on the invalid liens claim, and on the Association's counterclaim.[6] Plaintiffs also appeal the grant of the motion to quash the notices of depositions of an Association director and its attorney. The Association contends that the trial court erred in awarding Carothers Crossing only sixty percent of the attorneys' fees it incurred in obtaining the judgment.

## II. ANALYSIS

### A. The Court's Grant of Summary Judgment to Defendants on Plaintiffs' Claims

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits…show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. In *Rye v. Women's Care Ctr. of Memphis, MPLLC,* our Supreme Court adopted the standard applicable to summary judgment practice under Federal Rule of Civil Procedure 56, holding that:

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production by either (1) affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the moving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. . . . "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. . . . [S]ummary judgment should be granted if the nonmoving party's evidence *at the summary*

---

needed in order to allow both sides a fair opportunity to present their cases with respect to liability for attorneys [sic] fees and the reasonableness of those attorneys [sic] fees.

[6] With reference to this issue, Plaintiffs refer to a "breach of contract damage claim[]" against the Association

4

*judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. . . .

477 S.W.3d 235, 264-65 (Tenn. 2015), *cert. denied,* 136 S. Ct. 2452, 195 L. Ed. 2d 265 (2016). We review the trial court's ruling on a motion for summary judgment *de novo* with no presumption of correctness, as the resolution of the motion is a matter of law. *Rye*, 477 S.W.3d at 250 (citing *Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010); *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn. 1997)). We view the evidence in favor of the non-moving party by resolving all reasonable inferences in its favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692,695 (Tenn. 2002).

### 1. Tortious Interference of Contract by Capital Bank

In order to recover for tortious interference with the performance of a contract, the injured party must prove "(1) that there was a legal contract; (2) that the defendant knew of the existence of a contract; (3) that the defendant intended to induce a breach of the contract; (4) that the defendant acted maliciously; (5) that the contract was actually breached; (6) that the defendant's acts were the proximate cause of the breach; and (7) that plaintiff suffered damages resulting from the breach." *Lee v. State Volunteer Mut. Ins. Co.*, No. E2002-03127-COA-R3-CV, 2005 WL 123492, at *10 (Tenn. Ct. App. Jan. 21, 2005) (citing *Buddy Lee Attractions, Inc. v. William Morris Agency, Inc.*, 13 S.W.3d 343, 359 (Tenn. Ct. App. 1999); *Dynamic Motel Mgmt., Inc. v. Erwin,* 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975)). Moreover, a complaint for tortious interference must do more than merely state the legal elements of the cause of action; the complaint must state specific facts for each of the seven elements of the tort. *Lee*, 2005 WL 123492, at *10.

In the context of tortious interference with contract claims, malice is defined as "the willful violation of a known right." *Whalen v. Bourgeois*, No. E2013-01703-COA-R3-CV, 2014 WL 2949500, at *12 (Tenn. Ct. App. June 27, 2014) (quoting *Prime Co. v. Wilkinson & Snowden, Inc.*, No. W2003-00696-COA-R3-CV, 2004 WL 2218674, at *4 (Tenn. Ct. App. Sept. 30, 2004)). Evidence of malice is sufficient if it shows that the defendant's "conduct was intentional and without legal justification.… Interference is without justification if it 'is done for the indirect purpose of injuring the plaintiff or benefitting the defendant at the plaintiff's expense.'" *Whalen*, 2014 WL 2949500, at *12 (quoting *Crye-Leike Realtors, Inc. v. WDM, Inc.,* No. 02A01-9711-CH-00287, 1998 WL 651623 at *6 (Tenn. Ct. App. Sept. 24, 1998)).

Plaintiffs assert the trial court erred in granting summary judgment for Capital Bank on Plaintiffs' claims for tortious interference of contract because a genuine issue of material fact existed as to the malice element of the claim. Plaintiffs argue that Capital Bank tortiously interfered with the Association's contractual obligations under the Declaration by appointing its employees to the Association Board. Specifically, Plaintiffs contend that Capital Bank induced the Association to shirk its contractual

obligations to the homeowners by appointing Capital Bank employees as directors, who were motivated to advance the interests of Capital Bank—interests that run counter to the interests of the property owners.

Capital Bank contends that Plaintiffs have failed to allege sufficient facts to sustain their claim of tortious interference, specifically, that Capital Bank acted with malice in replacing the Board and that the replacement of the Board was the proximate cause of the inability to maintain the common areas.

In support of its motion, Capital Bank relied on the Declaration and the Settlement Agreement with WRD and WRI. Section 6.7(b) of the Declaration sets forth the right of the Developer to replace the Board:

(b) <u>Initial Selection by Developer</u>. The Developer shall appoint and remove the initial officers and members of the Board and may elect a majority of the Board until the earlier of (1) the time required by any Tennessee state law or (ii) sixty (60) days after ninety-nine percent (99%) of the Buildings Indicated by or permitted under the Urban Design Overlay or PDR have been completed and conveyed to Owners other than the Developer or a Builder. When used in this paragraph, "buildings" shall include both detached Buildings and Residential Units, but not outbuildings. The Developer may voluntarily surrender the right to appoint and remove officers and members of the Board before termination of the control period set forth in this <u>Section 6.7(b)</u>, in which case the Developer reserves the right to record an instrument specifying that, until the time Developer would have been required to end control of the Board, certain actions of the Association or Board must be approved by the Developer before they become effective.

The Agreement sets forth Capital Bank's rights and obligations:

[E]ffective the date of this Agreement, which shall be incorporated in the 9019 [Bankruptcy Court] Order, Borrowers Richey and Smithson hereby transfer, convey and assign all rights, title, and interest of Borrowers Richey and/or Smithson on behalf of Borrowers, to the extent assignable, in and to all Carothers Materials, ***including all rights, but not the obligations, to exercise the privileges allowed the "declarant", "founder" and/or "developer" of Carothers Crossing under those Master Deed Restrictions for Carothers Crossing*** of record as Instrument No. 20070627-0076581, Davidson County Register of Deeds, together with amendments and supplements thereto of any nature, and together with all rules and by-laws referred to therein or later created (collectively, the "Master Deed"); provided, however, by such conveyance, transfer or assignment, the Banks are not assuming any obligations or responsibility to perform or any

6

liability to pay for the Carothers Materials or to have any obligation under the Master Deed. ***It is the intent of the parties that the Banks will be vested with all rights, title and interest on the Carothers Materials*** which may, in the Banks' sole discretion, be executed by the Banks or transferred and assigned to any subsequent owner of the property secured to the Banks.

(Emphasis added.)

The Agreement confers on Capital Bank the rights of the developer; the Declaration gives the developer the authority to appoint and remove a majority of the members of the Board. This is evidence that Capital Bank acted within its authority in appointing members of the Board, and thus it acted with legal justification. *See Whalen*, 2014 WL 2949500, at \*12 (explaining that malice is an act done without legal justification). Accordingly, Capital Bank put forth evidence to negate an essential element of the tortious interference of contract claim and shifted the burden to Plaintiffs to establish a material question of fact on the issue of malice.

Plaintiffs responded to Capital Bank's motion for summary judgment and filed their own statement of additional material facts which they asserted were in dispute, relying on the declaration of Don Smithson, the founder and original developer of Carothers Crossing, as well as language in the Declaration to support their contention that Capital Bank acted with malice in replacing the board members for the Association.

The Declaration states that the "Association is responsible…for maintaining the Development and enforcing the Declaration"; the Master Deed states that "the Association is responsible, among other things, for maintaining the Commons and enforcing the Declaration." In his Declaration, Mr. Smithson states the following:

16. In discharge of my duties and responsibilities as Director, I joined with the other Directors in making demand on GreenBank to performed [sic] its obligations under the Declaration of Covenants like other property owners are required to do by the Declaration and Master Deed Restrictions. These demands started April 2010 and continued until my removal from the Board on August 26, 2011.

17. Attached hereto as Exhibit C is a true and exact copy of a letter I prepared and sent to Stan Puckett, President of GreenBank, to which no response was ever received.

18. In addition to not honoring its obligations under the Declaration of Covenants, GreenBank requested that the Board relieve GreenBank of its Declaration obligations.

19. On behalf of the Association and all other property owners in the Subdivision, the Board refused GreenBank's request to be relieved of its obligations.

7

20. At a meeting of the Board on August 26, 2011, attended by the Association Directors and their attorney, and GreenBank officers and attorney, repeated requests were made by GreenBank's attorney that the Directors to [sic] forgive GreenBank of its Declaration obligations, which the Board refused to do, at which time the Directors were given the removal letter attached hereto as Exhibit A.

The statements in Mr. Smithson's declaration show that Capital Bank requested the former members of the Association board to be relieved of the bank's obligations under the Declaration, that the former members refused Capital Bank's requests, and those members were thereafter removed from the board; other material filed by Plaintiffs in response to the motion shows that the board members were replaced by Capital Bank employees.

While Capital Bank had the right under the Declaration to replace board members, the fact that Capital Bank sought to avoid its responsibilities under the Declaration and, when it was refused, replaced the board with its employees who did not perform those responsibilities, raises an inference that Capital Bank's actions were motivated by malice and were taken to prevent the Association from fulfilling its obligations under the Declaration; this inference creates a genuine issue of fact for trial. Accordingly, Capital Bank was not entitled to judgment as a matter of law on the claim of tortious interference of contract claim, and we need not address the element of proximate cause.

## 2. Invalid Liens Claim against Association Directors[7]

Plaintiffs included a count in the Amended Complaint entitled "Invalid Liens," in which they asserted that the directors had filed liens against their homes for unpaid assessments for maintenance of the common areas in the subdivision; Plaintiffs sought a declaration that the liens were invalid.

The Association contended that its right to collect the payment of assessments was absolute and independent of the Association's obligations under the Master Deed and Charter. In support of this contention, the Association relied on its records showing an outstanding balance of $13,564.32 for Ms. Urbanavage and $13,601.38 for Ms. Cook; section 10.1 of the Declaration, which sets forth the obligation to pay the assessment; and section 10.9 of the Declaration, which authorizes the placement of liens on properties for the failure to pay assessments and reads as follows:

---

[7] Plaintiffs do not specifically appeal the slander of title claim but only contend that "the trial court erred by granting the Association summary judgment upon Plaintiffs' claims for removal of liens because a genuine issue of fact existed as to whether Plaintiffs owed the debt stated in the liens." Their brief on appeal goes on to address issues pertaining to the invalid liens claim.

8

10.9 Effect of Nonpayment of Assessment; Remedies
***

(b) Creation of a Lien. The Assessment Charge shall also be charged on the land and shall be a continuing lien upon the Parcel against which the Assessment Charge is made, which may be enforced upon recording of a claim of lien. This lien, in favor of the Association, shall secure the Assessment Charge which is then due and which may accrue subsequent to the recording of the claim of lien and prior to entry of final judgment of foreclosure. Any subsequent owner of the Parcel shall be deemed to have notice of the Assessment Charge on the land, whether or not a lien has been filed. The lien established by this Section 10.9(b) shall be subordinate to any first priority deed of trust placed on any Parcel from time to time.

This evidence put forth by the Association shows that both Ms. Urbanavage and Ms. Cook had an outstanding balance on their account for unpaid assessments, which is a continuing lien on the property, and that there is no language conditioning the payment of assessments on the Association performing its obligations under the Declaration. Accordingly, the Association put forth evidence that shows it was entitled to summary judgment.

Plaintiffs failed to put forth any evidence in their response to the Association's statement of facts or along with their own statement of material facts that raises a question of fact regarding the claim for invalid liens. Accordingly, the Association was entitled to judgment on this claim.

### 3. Breach of Fiduciary Duties by Association Directors

Plaintiffs also contend that the Association Directors breached their fiduciary duty to Plaintiffs by putting the financial interests of Capital Bank above the interests of the Association and its members by discontinuing the maintenance of the common areas in the subdivision and by allowing Capital Bank to pay reduced lot owner assessments instead of common expense shortfalls. Plaintiffs assert the trial court erred in granting summary judgment for the Association directors individually on this claim because a genuine issue of material fact existed as to whether the Association directors' conduct amounted to willful, wanton, or gross negligence under Tennessee Code Annotated section 48-58-601(c).

Tennessee Code Annotated section 48-58-601(b) and (c) set forth the rationale for and the grant of immunity to board members of nonprofit corporations, such as the Carothers Crossing Neighborhood Association:

(b) The general assembly finds and declares that the services of nonprofit boards are critical to the efficient conduct and management of the public

9

and charitable affairs of the citizens of this state. Members of such nonprofit boards must be permitted to operate without concern for the possibility of litigation arising from the discharge of their duties as policy makers.

(c) All directors, trustees or members of the governing bodies of nonprofit cooperatives, corporations, clubs, associations and organizations described in subsection (d), whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such cooperatives, corporations, clubs, associations or organizations. Such immunity from suit shall be removed when such conduct amounts to willful, wanton or gross negligence. . . .

Thus, the Association directors are immune from suit as a matter of law unless Plaintiffs put forth evidence establishing a material question of fact as to whether the members' conduct of the Association's affairs amounted to willful, wanton, or gross negligence.

"In order to prevail on a claim of gross negligence, a plaintiff must prove that the act was 'done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'" *McCaig v. Whitmore*, No. W2015-00646-COA-R3-CV, 2016 WL 693154, at *6 (Tenn. Ct. App. Feb. 22, 2016), *perm. app. denied* (June 24, 2016) (quoting *Leatherwood v. Wadley*, 121 S.W.3d 682, 693-94 (Tenn. Ct. App. 2003)).

In their response to the Association's motion, Plaintiffs relied on statements contained in paragraphs 19 and 20 of their amended complaint[8] to support their contention that the Association directors breached their fiduciary duties to them. Upon our review of the evidence put forth by Plaintiffs in response to both Capital Bank's and Carothers Crossing's motions for summary judgment, the only additional evidence in support of their contention are paragraphs 10 and 11 of Ms. Urbanavage's declaration and paragraphs 12 and 13 of Ms. Cook's declaration, which are identical to paragraphs 10 and 11 of Ms. Urbanavage's declaration:

10. Capital Bank appointed different persons to the Board of Directors of the Association in April, 2011, installing its employees and officers.

11. After the election of the new directors, nothing changed with respect to the rundown, trash[y] and unsightly condition of the Subdivision or

---

[8] Plaintiffs asserted that the directors appointed by Capital Bank "discontinued proper and adequate maintenance of the common areas and common maintenance areas in the Subdivision, as required by the Declaration, in order to relieve Capital Bank of its financial obligations under the Declaration to pay for such maintenance to the extent the cost thereof exceeds assessment revenues" and that the "Capital Bank Directors put the interests of them and their employer above the interests of Association members by not requiring Capital Bank to maintain lots it owns as required by the Declaration."

10

Association's failure to provide the necessary goods and services to restore and maintain the Subdivision in the condition required by the Declaration.

Plaintiffs' bare assertions in the Amended Complaint and the language in their declarations do not create a genuine issue of fact as to whether the directors acted with willful, wanton, or gross negligence. Accordingly, the court correctly granted summary judgment in favor of the directors on Plaintiffs' breach of fiduciary duty claim.

Plaintiffs also contend that the trial court erred in granting summary judgment to the Association on the basis that no claims remained after the directors were determined to be entitled to judgment as a matter of law. Pertinent to this issue, the court entered the following order:

> Carothers Crossing Neighborhood Association, Inc., contends that there is no cause of action against it separate and apart from the causes of action Plaintiffs assert against the individual directors, and, therefore, there are no causes of action remaining against the Association to be tried. The Association is, therefore, entitled to take judgment upon all causes [of] action asserted against it by Plaintiffs.

> The Court is of the opinion that the Association's contention is well-taken and should be included as part of the Order Addressing Summary Judgment Motions. The Court therefore finds that having granted summary judgment in favor of the individual directors, this Court concludes as a matter of law that nothing else remains to be tried against the Association.

We agree with this holding. Plaintiffs asserted no claim against the Association apart from those claims asserted against the individual directors. Accordingly, the court correctly held that there were no issues to be tried relative to the Association.

## B. Summary Judgment on the Association's Counterclaims

The trial court granted the Association summary judgment on its counterclaim for unpaid HOA assessments, holding that "nothing in the language of the warranty deeds, the Master Deed, or other governing documents in the record indicates that Plaintiffs are permitted to unilaterally stop paying the monthly HOA assessments because Carothers Crossings may have failed to properly maintain the common areas." Plaintiffs contend that the court erred in granting partial summary judgment on the Association's counterclaim because genuine issues of material fact exist as to Plaintiffs' affirmative defenses of prior, material breach and failure of consideration.

In support of its motion for summary judgment, the Association filed seven exhibits: (1) Ms. Urbanavage's Warranty Deed; (2) Ms. Cook's Warranty Deed; (3) the

Master Deed;[9] (4) Ms. Urbanavage's financial transactions; (5) Ms. Urbanavage's notice of lien; (6) Ms. Cook's financial transactions; (7) Ms. Cook's notice of lien.

Both the Urbanavage Warranty Deed and the Cook Warranty Deed state that the conveyances are subject to "Covenants, Conditions, Restrictions and Agreements, including the agreements to pay assessments for the maintenance of common areas, contained in the Master Deed (and By-Laws) for Carothers Crossing" and the "Charter of Incorporation of Carothers Crossing…"

The Declaration states "that the property comprising the Development shall be held, sold, and conveyed subject to the covenants, restrictions and easements of this Declaration, which shall run with the land and be binding on all parties and heirs…" Article 10.0 of the Declaration sets forth the Covenants for Maintenance Assessments:

> 10.1 <u>Obligation for Assessments</u>. The Developer, for each Parcel owned within the property submitted by this Declaration or Supplemental Declaration to the Development, hereby covenants, and each Owner of any Parcel by acceptance of a deed or other transfer instrument, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association the following Assessments:
>
>> (a) General Assessments for expenses included in the budget,
>>
>> (b) Special Assessments for the purposes provided in this Declaration,
>>
>> (c) Telecommunications Assessments for the purposes provided in this Declaration; and
>>
>> (d) Individual Parcel Assessments for any charges particular to that Parcel,
>
> ***
>
> 10.6 <u>Telecommunication Assessments</u>. A monthly Telecommunication Assessments shall be paid by each Owner for the provision of

---

[9] The Association's Statement of Undisputed Facts cites to section 10 of the Master Deed, which was filed as Exhibit 3. Exhibit 3 is titled "Master Deed Restrictions for Carothers Crossing" and only contains seven sections. In their response to the Association's Statement of Undisputed Fact, Plaintiffs admit that such language "is contained in the Declaration of Charter, Easements, Covenants, and Restrictions." Upon our review of the Declaration, it is apparent that the Association incorrectly cites to the Master Deed Restrictions, as section 10 of the Declaration contains the language the Association erroneously referenced. Because Plaintiffs do not dispute the error and correctly cite to the Declaration, we have examined the Declaration in our consideration of this issue.

Telecommunication Services to Owner's Parcel through Bulk Service Agreements as set forth in Article 17 of this Declaration, such assessment to mean the fee and any applicable taxes, franchise fees, surcharges or other amount that may be charged by the service provider for provision of Telecommunication Services. The Telecommunication Assessment may be billed separately from other Assessments levied by the Association, shall be in addition to the other Assessments set forth in this Declaration, and shall be subject to the terms and conditions applicable to Assessments contained in Article 17. No Owner may be exempted from liability for the Telecommunication Assessment by reason of waiver of the use or enjoyment of the Telecommunication Services.

\*\*\*

The Association also filed documents titled "Financial Transactions – 7/28/15" for Urbanavage and Cook; the documents stated that Urbanavage owes $199.36 per month for Assessments and has a balance of $13,564.32 and that Cook owes $194.38 per month in assessments and has a balance of $13,601.36.

This evidence shows that Ms. Urbanavage's and Ms. Cook's ownership of property in Carothers Crossing requires that they pay monthly assessments, as set forth in the Declaration and the master deeds. Moreover, there is no evidence to suggest that their obligation to pay is conditioned on the obligations of the association. The court correctly held that Plaintiffs did not have the right under the documents to unilaterally withhold payment of the assessment. We are of opinion, however, that the material put forth by the Association did not entitle it to summary judgment on Plaintiffs' affirmative defenses to the Associations' claims, evidence in support of which was contained in the declarations of Ms. Urbanavage and Ms. Cook.[10]

---

[10] The Plaintiffs' reply to the counter-claim included the following Affirmative Defenses:

> 1. Counter-Plaintiff cannot enforce Counter-Defendants' obligations under the Master Deed and Declarations of Charter because of its prior, material breach of its obligations as imposed therein.
> 2. There is and has been a failure of consideration because of Counter-Plaintiffs failure to provide the services to which Cross-Defendants were and are entitled to receive under the Master Deed Restrictions and Declaration of Charter.
> 3. Counter-Defendants are entitled to offset any judgment rendered against them for money damages against the damages they have sustained because of the tort and contract claims alleged against Counter-Plaintiff.

In her declaration, Ms. Urbanavage identifies representations made to her as to the matters maintained by the Association; states that the Association "abandoned its duties and responsibilities" to maintain the common areas required by the Declaration and that "the claim made against me in large part represents proprietary services, such as internet, television and telephone, that the Association failed to provide or which were so unusable and nonfunctional that they were of no value." She also describes the decrease in value of her home "because the Association ceased providing the water, fertilizer, manpower and

13

## C. Award of Attorney Fees

In the order granting attorney's fees, the court explained the contractual and legal basis for the award:

The Court further finds that the parties are bound by the terms of the Master Deed, which clearly provides for reasonable attorney's fees in the event the Association pursues legal action for unpaid assessments. The Court has carefully considered the Affidavits submitted by counsel for both sides, as well as the factors set forth in the Tennessee Code of Professional Responsibility DR2-106,[11] which is a part of Tenn. Sup. Ct. R. 8. After carefully reviewing the bills submitted by Carothers Crossing Neighborhood Association, Inc., the Court finds that 60% of the fees incurred were proper, reasonabl[e] attorney's fees incurred by the Association and that the Association is entitled to a judgment against [Plaintiffs].

The court correctly held, and the parties do not dispute, that section 10.1 of the Declaration provides the contractual and legal basis for the award of attorney's fees.[12] Inasmuch as we have determined that Plaintiffs' affirmative defenses to the Association's counterclaim are still before the court, we have determined that the award of fees should be vacated, to be reconsidered after the trial on the counterclaim. Accordingly, the issue

---

equipment to maintain the Subdivision in the condition it was to when I bought my lot." The statements in Ms. Cook's declaration largely mirror those in Ms. Urbanavage's.

[11] The former Disciplinary Rule 2-106, a part of Rule 8 of the Tennessee Supreme Court Rules, was not in effect at the time the award in this case was made, having been replaced by Rule of Professional Conduct 1.5. As noted in *Chaffin v. Ellis*, the rules "closely mirror[]" each other. 211 S.W.3d. 264, 290 n.14 (Tenn. Ct. App. 2006).

[12] Section 10.1, "Obligation for Assessments" reads as follows:

The Developer, for each Parcel owned within the property submitted by this Declaration or Supplemental Declaration to the Development, hereby covenants, and each Owner of any Parcel by acceptance of a deed or other transfer instrument, whether or not it shall be so expressed in such deed, is deemed to covenant and agree to pay to the Association the following Assessments:

* * *

together with a late fee and interest, as established by the Board from time to time, and cost of collection when delinquent, including a reasonable attorney's fee whether or not suit is brought. Upon default in the payment of any one or more installments, the Board may accelerate the entire balance of such Assessment, which shall be declared due and payable in full.

14

raised by Plaintiffs with respect to the court's grant of the motion to quash is pretermitted.

In light of our resolution of this appeal and in our discretion, we decline to award the Association its attorneys' fees incurred in this appeal.

### IV. CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment to Capital Bank on Plaintiffs' claim of tortious interference with their contractual rights and to the Association on its counterclaim; we vacate the judgment awarding fees to the Association and the order quashing the Plaintiff's notice of deposition; we affirm the grant of summary judgment to the Association and Association Directors on Plaintiffs' breach of fiduciary duty and invalid liens claims. We remand the case for proceedings consistent with this opinion and the judgment filed herewith.

_____

RICHARD H. DINKINS, JUDGE